**THIS PLAN HAS <u>NOT</u> BEEN APPROVED FOR SOLICITATION PURPOSES OR OTHERWISE.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| F-Squared Investment Management, LLC, *et al.*,[1] | ) | Case No. 15-11469 (LSS) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) |  |

---

**JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

**RICHARDS, LAYTON & FINGER, P.A**.
Russell C. Silberglied (No. 3462)
Zachary I. Shapiro (No. 5103)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700

*Counsel for the Debtors and Debtors in Possession*

**BROWN RUDNICK LLP**
William Baldiga
Seven Times Square
New York, New York 10036
Telephone:  (212) 209-4800

-and-

Sunni P. Beville
Ben Chapman
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200

*Counsel to the Official Committee of Unsecured Creditors*

Dated:    October 28, 2015
             Wilmington, Delaware

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  F-Squared Investment Management, LLC (9247), F-Squared Investments, Inc. (0788), F-Squared Retirement Solutions, LLC (9247), F-Squared Alternative Investments, LLC (9247), F-Squared Solutions, LLC (9247), F-Squared Institutional Advisors, LLC (9247), F-Squared Capital, LLC (5257), AlphaSector LLS GP 1, LLC (3342), and Active Index Solutions, LLC (0788).  The Debtors' address is 945 Concord Street, Framingham, Massachusetts 01701.

**TABLE OF CONTENTS**

**Page**

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ................................................. 1
    A.    Defined Terms ........................................................................................ 1
    B.    Rules of Interpretation ........................................................................... 6
    C.    Exhibits .................................................................................................. 7

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS ................................................. 7
    A.    Administrative Claims ............................................................................ 7
    B.    Professional Compensation Claims ......................................................... 7
    C.    Priority Tax Claims ............................................................................... 8

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ...... 8
    A.    Summary ............................................................................................... 8
    B.    Classification and Treatment of Claims and Equity Interests ................... 8
    C.    Elimination of Vacant Classes ............................................................... 9
    D.    Allocation of Distributions Between Principal and Interest ....................... 10
    E.    Special Provision Governing Unimpaired Claims .................................... 10
    F.    Non-Consensual Confirmation ............................................................... 10

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .......................................... 10
    A.    Appointment of the Liquidating Trustee and the Liquidating Trust Committee ........... 10
    B.    The F-Squared Liquidating Trust ............................................................ 10
    C.    Rights and Powers of the Liquidating Trustee ......................................... 11
    D.    Fees and Expenses of the F-Squared Liquidating Trust ........................... 11
    E.    Periodic Reports to Be Filed by the F-Squared Liquidating Trust ............ 11
    F.    Directors/Officers/Managers and Other Authorized Persons of the Debtors ......... 11
    G.    Liquidation, Dissolution and Termination of the Debtors.......................... 11
    H.    Preservation of Privileges of the Estates and Debtors............................... 12
    I.    Operations of the Debtors Between the Confirmation Date and the Effective Date ...... 12
    J.    Establishment of the Administrative Bar Date ......................................... 12
    K.    Term of Injunctions or Stays.................................................................. 12
    L.    Cancellation of Equity Interests ............................................................. 12
    M.    Dissolution of the Creditors' Committee ................................................. 12

ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS ............................................... 13
    A.    Initial Distribution Date ......................................................................... 13
    B.    Disputed Claims Reserve ....................................................................... 13
    C.    Subsequent Distributions ....................................................................... 13
    D.    Record Date for Distributions ................................................................ 14
    E.    Delivery of Distributions ....................................................................... 14
    F.    Manner of Cash Payments Under the Plan or the Liquidating Trust Agreement ...... 15
    G.    Time Bar to Cash Payments by Check ..................................................... 15
    H.    Limitations on Funding of Disputed Claims Reserves............................... 15
    I.    Compliance with Tax Requirements ....................................................... 15
    J.    No Payments of Fractional Dollars ......................................................... 15
    K.    Post-Petition Interest on Claims ............................................................. 15
    L.    No Distribution in Excess of Allowed Amount of Claim .......................... 15
    M.    Setoff and Recoupment ......................................................................... 16

ARTICLE VI. DISPUTED CLAIMS ............................................................................... 16
    A.    No Distribution Pending Allowance ....................................................... 16
    B.    Resolution of Disputed Claims ............................................................... 16

i

C.     Estimation of Claims................................................................................................16
D.     Disallowance of Claims ..........................................................................................16
E.     Adjustment to Claims Without Objection ..............................................................16
F.     Amendments to Claims or Interests .......................................................................16

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........................17
A.     Rejection of Executory Contracts and Unexpired Leases ......................................17
B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases..............17
C.     Debtors' Insurance Policies.....................................................................................17

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE........................................................18
A.     Conditions Precedent to the Effective Date ...........................................................18
B.     Establishing the Effective Date ...............................................................................18

ARTICLE IX. RELEASE, INJUNCTIVE AND RELATED PROVISIONS .........................................................18
A.     Compromise and Settlement ...................................................................................18
B.     Releases by the Debtors ..........................................................................................18
C.     Exculpation .............................................................................................................19
D.     Injunction ................................................................................................................19
E.     Releases of Liens ....................................................................................................19
F.     Substantive Consolidation.......................................................................................20
G.     Preservation of Rights of Action ............................................................................20

ARTICLE X. RETENTION OF JURISDICTION ................................................................................................21

ARTICLE XI. MISCELLANEOUS PROVISIONS................................................................................................22
A.     Payment of Statutory Fees ......................................................................................22
B.     Modification of Plan ...............................................................................................23
C.     Revocation of Plan ..................................................................................................23
D.     Successors and Assigns...........................................................................................23
E.     Governing Law ........................................................................................................23
F.     Reservation of Rights ..............................................................................................23
G.     Section 1146 Exemption .........................................................................................23
H.     Section 1125(e) Good Faith Compliance ...............................................................23
I.     Further Assurances..................................................................................................23
J.     Service of Documents .............................................................................................24
K.     Filing of Additional Documents.............................................................................24
L.     No Stay of Confirmation Order...............................................................................24
M.     Aid and Recognition ...............................................................................................24

**TABLE OF EXHIBITS**[2]

| | |
|---|---|
| Exhibit A | Liquidating Trust Agreement |
| Exhibit B | Rejected Insurance Policies |

---

[2] All exhibits to this Plan will be included with the Plan Supplement, which will be filed in substantially final form with the Bankruptcy Court no later than ten (10) calendar days prior to the deadline to vote to accept or reject the Plan. The Plan Supplement shall be available for inspection (i) at the Office of the Clerk of the Bankruptcy Court, or (ii) at http://www.pacer.gov, or (iii) from the Noticing Agent website at www.bmcgroup.com/fsquared, or (iv) additionally, interested parties can obtain copies by contacting Debtors' counsel once they are filed. The Debtors, in consultation with the Creditors' Committee, reserve the right to modify, amend, supplement, restate or withdraw the Plan Supplement after it is Filed.

RLF1 13174014v.1

**JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, the Plan Proponents hereby respectfully propose the following joint plan of liquidation under chapter 11 of the Bankruptcy Code.

## ARTICLE I.

## DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Administrative Bar Date*" means the first Business Day that is thirty (30) days after service of the notice of the Effective Date and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Expense in the manner indicated in Article II hereof.

2.    "*Administrative Claims*" means Claims that have been timely filed before the Administrative Bar Date, pursuant to the deadline and procedure set forth herein (except as otherwise provided herein or by a separate order of the Bankruptcy Court), for costs and expenses of administration under Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services); and (b) all fees and charges assessed against the Estates under 28 U.S.C. §1930; *provided, however*, that the U.S. Trustee shall not be required to file a request for payment of fees and charges assessed against the Estates under 28 U.S.C. § 1930 before the Administrative Bar Date; *provided, further*, that all requests of Governmental Units for payment of Administrative Tax Claims shall not be subject to the Administrative Bar Date.  As used herein, the term "Administrative Claims" shall exclude Professional Compensation Claims.

3.    "*Administrative Tax Claims*" means Administrative Claims by a Governmental Unit for taxes under Section 503(b)(1)(B), (C) or (D) (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

4.    "*Affiliate*" has the meaning set forth in Section 101(2) of the Bankruptcy Code.

5.    "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated; (b) a proof of Claim that has been filed and as to which the Debtors, the Liquidating Trustee, the Creditors' Committee or other parties-in-interest have not Filed an objection by the applicable Claims Objection Bar Date; (c) a Claim that either is not Disputed or has been allowed by a Final Order; (d) a Claim that is allowed:  (i) in any stipulation with the Debtors, the Creditors' Committee or the Liquidating Trustee, as applicable, of amount and nature of Claim executed prior to or following the entry of the Confirmation Order and, if necessary, approved by the Bankruptcy Court; or (ii) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (e) a Claim that is allowed pursuant to the terms hereof; or (f) a Disputed Claim as to which a proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

6.    "*Asset Purchase Agreement*" means that certain *Asset Purchase Agreement by and among F-Squared Investment Management, LLC, the Subsidiaries Listed on Schedule A Hereto, Broadmeadow Capital, LLC, and Solely for the Purpose of Section 8.4 Cedar Capital, LLC, dated as of July 3, 2015*, made by and among the Debtors and the Purchaser, as amended (including ancillary documents).

7.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code.

8.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

9.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

10.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

11.    "*Beneficiaries*" means holders of Allowed Claims or Interests entitled to receive Distributions from the Liquidating Trust Fund under the Plan, whether or not such Claims or Interests were Allowed Claims or Interests on the Effective Date.

12.    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Fed. R. Bankr. P. 9006(a)).

13.    "*Cash*" means legal tender of the United States of America or the equivalent thereof.

14.    "*Causes of Action*" means all claims, actions, causes of action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims of any of the Debtors, the Debtors-in-Possession and/or the Estates (including, without limitation, those actions set forth in the Plan Supplement) that are or may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date against any entity, based in law or equity, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

15.    "*Chapter 11 Cases*" means the chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date, which are jointly administered under case number 15-11469 (LSS).

16.    "*Claim*" means a "claim" (as that term is defined in Section 101(5) of the Bankruptcy Code) against a Debtor.

17.    "*Claims Objection Bar Date*" means the bar date for objecting to proofs of claim, which shall be one-hundred eighty (180) days after the Effective Date; *provided*, *however*, that the Liquidating Trustee may seek by motion additional extensions of this date from the Bankruptcy Court.

18.    "*Claims Register*" means the official claims registers in the Debtors' Chapter 11 Cases maintained by the Noticing Agent on behalf of the Clerk of the Bankruptcy Court.

19.    "*Class*" means a category of holders of Claims or Equity Interests as set forth in Article III hereof pursuant to Section 1122(a) of the Bankruptcy Code.

20.    "*Committee Support Letter*" means that certain letter from the Creditors' Committee expressing its support for the Plan and urging the holders of Claims in Class 3 to vote in favor of the Plan.  The Committee Support Letter was Filed on _____, 2015 [Docket No. __] and a copy was included in the solicitation package that the holders of Claims in Class 3 received pursuant to the Disclosure Statement Order.

21.    "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

22. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

23. "*Creditors' Committee*" means the official committee of unsecured creditors for the Chapter 11 Cases appointed by the U.S. Trustee, pursuant to Section 1102 of the Bankruptcy Code, on July 15, 2015 [Docket No. 40].

24. "*Debtors*" or "*Debtors in Possession*" means, collectively, the above-captioned debtors and debtors in possession specifically identified on the cover page to this Plan.

25. "*Disclosure Statement Order*" means the order approving the Disclosure Statement, which was entered by the Bankruptcy Court on _____ [Docket No. __].

26. "*Disclosure Statement*" means the *Disclosure Statement for the Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors*, dated as of October 28, 2015, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time.

27. "*Disputed Claims Reserve*" means the reserve fund created pursuant to Article V.B.1 of the Plan.

28. "*Disputed*" means, with respect to any Claim, any Claim: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (b) as to which a Debtor, the Creditors' Committee or the Liquidating Trustee has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by a Debtor, the Creditors' Committee or Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

29. "*Distributions*" means the distributions of Cash and beneficial interests in the F-Squared Liquidating Trust to be made in accordance with the Plan and/or the Liquidating Trust Agreement.

30. "*Effective Date*" means the date established pursuant to Article VIII.B of the Plan.

31. "*Earn-Out Payments*" means the Initial Earn-Out Payment and the Final Earn-Out Payment (each as defined in the Asset Purchase Agreement).

32. "*Entity*" has the meaning set forth in Section 101(15) of the Bankruptcy Code.

33. "*Equity Interest*" means any equity interest in a Debtor that existed immediately prior to the Petition Date, including, without limitation: (a) any common equity interest in a Debtor that existed immediately prior to the Petition Date, including, without limitation, all issued, unissued, authorized or outstanding shares of common stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests at any time; (b) any preferred equity interest in a Debtor that existed immediately prior to the Petition Date, including, without limitation, all issued, unissued, authorized or outstanding shares of preferred stock; and, as to any of the foregoing, (c) any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests.

34. "*Estate*" means the estate of each Debtor created on the Petition Date by Section 541 of the Bankruptcy Code.

35. "*Exculpated Parties*" means, collectively, the Debtors-in-Possession, the Creditors' Committee, the individual members of the Creditors' Committee (solely in their capacities as such), and the current and former Representatives of each of the foregoing (each in their individual capacities as such) that served in such capacities between the Petition Date and the Effective Date.

36. "*File*" or "*Filed*" means, with respect to any pleading, entered on the docket of the Chapter 11 Cases and properly served in accordance with the Bankruptcy Rules.

37. "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to

which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

38. "*F-Squared Liquidating Trust*" means the trust established pursuant to Article IV of the Plan and in accordance with the Liquidating Trust Agreement.

39. "*General Bar Date Order*" means the *Order Establishing Bar Dates for Filing Claims*, entered by the Bankruptcy Court on August 10, 2015 [Docket No. 126].

40. "*General Bar Date*" means September 14, 2015 at 5:00 p.m. (Eastern Time), as established in the General Bar Date Order.

41. "*General Unsecured Claims*" means Claims against any Debtor that are not Secured Claims, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Intercompany Claims or Equity Interests.

42. "*Governmental Unit Bar Date*" means January 4, 2016 at 5:00 p.m. (Eastern Time), as established in the General Bar Date Order for each and every Governmental Unit.

43. "*Governmental Unit*" has the meaning set forth in Section 101(27) of the Bankruptcy Code.

44. "*Impaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, "impaired" within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code.

45. "*Initial Distribution Date*" means the date on which the F-Squared Liquidating Trust shall make its initial Distribution, which shall be a date selected by the Liquidating Trustee.

46. "*Intercompany Claims*" means Claims held by a Debtor against another Debtor.

47. "*Intercompany Interest*" means any Equity Interest of a Debtor that is held by another Debtor, including (a) all issued, unissued, authorized or outstanding shares of stock together with any warrants, options or contractual rights to purchase or acquire such Equity Interests at any time and all rights arising with respect thereto and (b) partnership, limited liability company or similar interests in a Debtor.

48. "*Liquidating Trust Agreement*" means that certain agreement establishing and delineating the terms and conditions of the F-Squared Liquidating Trust, substantially in the form attached hereto as Exhibit A, and as may amended and to be filed as part of the Plan Supplement.

49. "*Liquidating Trust Assets*" means all assets of the Debtors or of their Estates  as of the Effective Date, including, without limitation, (a) all Cash on hand, (b) all proceeds of the Sale, (c) all rights under (i) the Asset Purchase Agreement and payments owing to the Debtors thereunder, including the Debtors' rights to receive any Earn-Out Payments, (ii) the Sale Order, and (iii) any other order of the Bankruptcy Court, (d) all Retained Causes of Action, (e) all tax refunds, (f) accounts receivable, (g) any assets not sold pursuant to the Asset Purchase Agreement, (h) all proceeds of any of the foregoing and all proceeds of any of the foregoing received by any Entity on or after the Effective Date and (i) all of the Debtors' books and records.

50. "*Liquidating Trust Committee*" means those individuals appointed in accordance with the Liquidating Trust Agreement with the powers and responsibilities set forth in the Liquidating Trust Agreement.

51. "*Liquidating Trust Expenses*" means the overhead and other operating expenses of the F-Squared Liquidating Trust, including, but not limited to, the fees and expenses of the Liquidating Trustee and the reasonable fees and expenses of professionals retained by the Liquidating Trustee.

52. "*Liquidating Trust Operational Reserve*" means the reserve established by the F-Squared Liquidating Trust to hold the amount of Cash or other Liquidating Trust Assets deemed necessary to satisfy its anticipated future Liquidating Trust Expenses to the extent permitted under Revenue Procedure 94-45.

53. "*Liquidating Trust Fund*" means the fund to be established on the Effective Date pursuant to Article IV.B of the Plan to, among other things, hold the Liquidating Trust Assets, less Liquidating Trust Expenses as incurred and as reserved for in the Liquidating Trust Operational Reserve, to be utilized for distributions on account of Allowed Claims and Allowed Interests in accordance with the terms of the Plan, less any amounts set aside in the Disputed Claims Reserve; *provided*, *however*, that any surplus amounts in the Liquidating Trust Operational Reserve and any Disputed Claims Reserve shall be returned to the Liquidating Trust Fund.

54. "*Liquidating Trustee*" means the person appointed by the Creditors' Committee with approval from the Debtors, which shall not be unreasonably withheld, in accordance with the Liquidating Trust Agreement to administer the F-Squared Liquidating Trust.

55. "*Noticing Agent*" means BMC Group, Inc.

56. "*Parent*" means F-Squared Investment Management, LLC.

57. "*Purchaser*" means Broadmeadow Capital, LLC.

58. "*Petition Date*" means July 8, 2015, the date on which the Debtors Filed the Chapter 11 Cases.

59. "*Plan*" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, and the Plan Supplement, which is incorporated herein by reference.

60. "*Plan Proponents*" means, collectively, the Debtors and the Creditors' Committee.

61. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules and exhibits to the Plan.

62. "*Priority Non-Tax Claims*" means Claims entitled to priority in payment pursuant to Sections 507(a)(4), 507(a)(5), 507(a)(7) or 507(a)(9) of the Bankruptcy Code.

63. "*Priority Tax Claims*" means Claims of Governmental Units of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

64. "*Pro Rata*" means the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of all Allowed Claims in such Class.

65. "*Professional*" means any Entity employed pursuant to a Final Order in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; *provided, however,* that Professionals shall include ordinary course Professionals that were retained pursuant to the *Order Authorizing the Debtors to Employ and Compensate Professionals Utilized in the Ordinary Course of Business, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 125] solely to the extent such ordinary course Professionals are required to File fee applications pursuant to such order.

66. "*Professional Compensation Claim*" means a Claim of a Professional for professional services rendered or costs incurred on or after the Filing Date through the Effective Date.

67. "*Professional Claims Bar Date*" means 5:00 p.m. (Prevailing Eastern Time) on the date that is the first Business Day after the date that is forty-five (45) days after the Effective Date.

68. "*Ratable Proportion*" means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed and Disputed Claims in that Class.

69. "*Record Date*" means the record date for determining the entitlement of holders of Claims to receive Distributions under the Plan on account of Allowed Claims. The Record Date shall be the date on which the Disclosure Statement Order is entered.

70. "*Releasees*" means, collectively, the Debtors' officers and directors and the Sale Professionals, serving in their capacities as such, in each case, from May 1, 2015 through and including the Effective Date.

71. "*Representatives*" means, with regard to any Entity, its officers, managers, directors, employees, advisors, attorneys, professionals, accountants, investment bankers, financial advisors, consultants and agents, each in their capacities as such. For purposes of this definition, the term "manager" shall mean the manager of a board of managers of a limited liability company.

72. "*Rejected Insurance Policies*" mean those insurance policies of the Debtors identified in the Schedule of Rejected Insurance Policies included in the Plan Supplement.

73. "*Retained Causes of Action*" mean all Causes of Action other than those Causes of Action that are released, compromised and/or settled pursuant to Article IX hereof.

74. "*Sale*" means the sale of substantially all of the Debtors' operating assets to the Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

75. "*Sale Closing Date*" means September 8, 2015.

76. "*Sale Order*" means the *Order (A) Authorizing and Approving (1) the Sale of Substantially All of the Debtors' Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests; and (2) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related Relief*, entered by the Bankruptcy Court on August 25, 2015 [Docket No. 192], which approved the Sale.

77. "*Sale Professionals*" means (i) Richards, Layton & Finger, P.A., (ii) Gennari Aronson, LLP, (iii) Stillwater Advisory Group LLC and (iv) Grail Advisory Partners LLC d/b/a PL Advisors.

78. "*Schedules*" means the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs Filed on August 12, 2015 and August 13, 2015, as may be amended.

79. "*Secured Claim*" means a Claim that is secured (i) by a lien that is valid, perfected and enforceable under the Bankruptcy Code or applicable non-bankruptcy law or by reason of a Final Order; or (ii) as a result of rights of setoff under Section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

80. "*Subsequent Distribution Date*" means the date(s) following the Initial Distribution Date on which the F-Squared Liquidating Trust shall make one or more Distribution(s), which date(s) shall be selected by the Liquidating Trustee in his or her business judgment; *provided*, *however*, that the F-Squared Liquidating Trust shall to the extent economically feasible and reasonable make Distributions at least annually to the extent provided in the Liquidating Trust Agreement, except that the Liquidating Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its Liquidating Trust Assets or to meet claims and contingent liabilities (including Disputed Claims).

81. "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

82. "*Unimpaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code.

B.    *Rules of Interpretation*

1. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract,

6

instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings of Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Fed. R. Bankr. P. 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.    All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

C.    *Exhibits*

All exhibits to this Plan will be included with the Plan Supplement, which will be filed in substantially final form with the Bankruptcy Court no later than ten (10) calendar days prior to the deadline to vote to accept or reject the Plan.  The Plan Supplement shall be available for inspection (i) at the Office of the Clerk of the Bankruptcy Court, or (ii) at http://www.pacer.gov, or (iii) from the Noticing Agent website at www.bmcgroup.com/fsquared, or (iv) additionally, interested parties may also obtain a copy of the Plan Supplement (including all exhibits contained therein), once filed, from the Debtors by a written request sent to the following address:

> Richards, Layton & Finger, P.A.
> One Rodney Square
> 920 North King Street
> Wilmington, Delaware 19801
> Attn.:  Zachary I. Shapiro, Esq.

## ARTICLE II.

## ADMINISTRATIVE AND PRIORITY CLAIMS

A.    *Administrative Claims*

Subject to the provisions of Sections 328, 330(a), and 331 of the Bankruptcy Code, the Debtors or the F-Squared Liquidating Trust, as applicable, shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash:  (i) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due); (iii) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Liquidating Trustee, as applicable; or (iv) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided*, *however*, that the U.S. Trustee shall not be required to file a request for payment of fees and charges assessed against the Estates under 28 U.S.C. §1930 before the Administrative Bar Date; *provided*, *further*, that all requests of Governmental Units for payment of Administrative Tax Claims shall not be subject to the Administrative Bar Date.

B.    *Professional Compensation Claims*

The Bankruptcy Court shall fix in the Confirmation Order a date for filing all Professional Compensation Claims, the deadline for which shall be forty-five (45) days after the Effective Date pursuant to Article XI.A hereof unless such deadline is extended for one or more Professionals by agreement of the Liquidating Trustee.  Any Professional Compensation Claim not Filed by the Professional Compensation Claims Bar Date (or such later date

as may be agreed upon by the Liquidating Trustee) in accordance with Article XI.A shall be deemed disallowed under this Plan and shall be forever barred against the Estates, the F-Squared Liquidating Trust, or any of the Liquidating Trust Assets or property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.  Subject to the provisions of Sections 328, 330(a), and 331 of the Bankruptcy Code, the Liquidating Trust shall pay each holder of an Allowed Professional Compensation Claim the full unpaid amount of such Allowed Professional Compensation Claim in Cash no later than five (5) Business Days after the date that such Claim is Allowed by order entered by the Bankruptcy Court.

C.    *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim against a Debtor agrees to a different treatment, the Debtors or the F-Squared Liquidating Trust, as applicable, shall pay each holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the latest of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.    *Summary*

1.    In accordance with Section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims, as described in Article II.  Accordingly, except for Administrative Claims and Priority Tax Claims, all Claims against and Equity Interests in a particular Debtor are placed in Classes as set forth below.

2.    The following table classifies Claims against and Equity Interests in each Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Equity Interests in the Parent | Impaired | Deemed to Reject |

B.    *Classification and Treatment of Claims and Equity Interests*

1.    Secured Claims (Class 1)

(a)    *Classification*:  Class 1 consists of Secured Claims.

(b)    *Treatment*:  Unless otherwise mutually agreed upon by the holder of an Allowed Secured Claim and the Debtors or Liquidating Trustee, as applicable, on the later of the Effective Date and the date such Allowed Secured Claim becomes Allowed, or as soon thereafter as is practicable, the F-Squared Liquidating Trust shall pay each holder of an Allowed Secured Claim, at the Liquidating Trustee's sole and exclusive election, in full and final satisfaction of such Allowed Secured Claim, one of the following:

(i)    The collateral securing such Allowed Secured Claim;

(ii)        Cash in an amount equal to the value of such collateral; or

(iii)       such other treatment that renders such Allowed Secured Claim Unimpaired.

(c)  *Voting*: Class 1 is Unimpaired, and each holder of a Secured Claim is conclusively deemed to have accepted the Plan and, therefore, is not entitled to vote on the Plan.

2.    Priority Non-Tax Claims (Class 2)

(a)  *Classification*:  Class 2 consists of Priority Non-Tax Claims.

(b)  *Treatment:*  Unless otherwise mutually agreed upon by the holder of an Allowed Priority Non-Tax Claim and the Debtors or Liquidating Trustee, as applicable, on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes Allowed, or as soon thereafter as is practicable, the F-Squared Liquidating Trust shall pay to each holder of an Allowed Priority Non-Tax Claim the full amount of such Allowed Priority Non-Tax Claim in Cash in full and final satisfaction of such Allowed Priority Non-Tax Claim.

(c)  *Voting*:  Class 2 is Unimpaired, and each holder of a Priority Non-Tax Claim is conclusively deemed to have accepted the Plan and, therefore, is not entitled to vote on the Plan.

3.    General Unsecured Claims (Class 3)

(a)  *Classification*:  Class 3 consists of General Unsecured Claims.

(b)  *Treatment*:  On or as soon as practicable after the Initial Distribution Date and/or any Subsequent Distribution Date, the F-Squared Liquidating Trust shall pay each holder of an Allowed General Unsecured Claim, in full and final satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of the Liquidating Trust Fund.

(c)  *Voting*:  Class 3 is Impaired, and holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.    Equity Interests in the Parent (Class 4)

(a)  *Classification:* Class 4 consists of Equity Interests in the Parent.

(b)  *Treatment:* On the Effective Date, all Equity Interests issued by the Parent shall be cancelled. Each holder of an Equity Interest in the Parent shall neither receive nor retain any property or interest in property on account of such Equity Interests; *provided*, *however*, that in the event, and only in the event, that all Allowed Claims have been satisfied in accordance with the Bankruptcy Code and the Plan, holders of Equity Interests in the Parent may receive their Pro Rata share of the Liquidating Trust Fund.  It is not expected that any Distributions will be made to holders of Equity Interests in the Parent.  The rights of holders in Class 4 shall be nontransferable.

(c)  *Voting:* Class 4 is impaired by the Plan.  Class 4 shall be deemed to have voted to reject the Plan.

C.    *Elimination of Vacant Classes*

Any Class of Claims or Equity Interests that does not contain, as of the Confirmation Date, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

D.    *Allocation of Distributions Between Principal and Interest*

For Distributions in respect of Allowed General Unsecured Claims, to the extent that any such Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

E.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the F-Squared Liquidating Trust's right in respect of any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

F.    *Non-Consensual Confirmation*

The Plan Proponents reserve the right to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.  To the extent that any Class votes to reject the Plan, the Plan Proponents further reserve the right to modify the Plan in accordance with Article XI.B.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Appointment of the Liquidating Trustee and the Liquidating Trust Committee*

On or prior to the Confirmation Date, the Creditors' Committee with the approval of the Debtors, which shall not be unreasonably withheld, shall appoint the Liquidating Trustee and the three (3) member Liquidating Trust Committee.  The identities of the Liquidating Trustee and the members of the Liquidating Trust Committee shall be included in the Plan Supplement.  The Liquidating Trustee shall serve at the direction of the Liquidating Trust Committee and in accordance with the Liquidating Trust Agreement and the Plan; *provided*, *however*, the Liquidating Trust Committee may not direct the Liquidating Trustee or the members of the Liquidating Trust Committee to act inconsistently with their duties under the Liquidating Trust Agreement and the Plan.

B.    *The F-Squared Liquidating Trust*

1.    Formation of the F-Squared Liquidating Trust

On the Effective Date, the F-Squared Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, *inter alia*, (a) administering the Liquidating Trust Fund, (b) resolving all Disputed Claims, (c) pursuing, to the extent it sees fit, the Retained Causes of Action, and (d) making all Distributions to the Beneficiaries provided for under the Plan.  The F-Squared Liquidating Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Section 301.7701-4(d) and the sole purpose of the F-Squared Liquidating Trust shall be to liquidate and distribute the Liquidating Trust Assets in accordance with United States Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to and consistent with its liquidating purpose.

2.    Funding of the F-Squared Liquidating Trust

On the Effective Date, the Liquidating Trust Assets shall vest automatically in the F-Squared Liquidating Trust.  The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief, and the Confirmation Order shall be considered an order granting such relief.  The transfer of the Liquidating Trust Assets to the F-Squared Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries.  For all federal income tax purposes, the transfer of the Liquidating Trust Assets to the F-Squared Liquidating Trust shall be treated as (1) a transfer of the Liquidating Trust Assets directly to the Beneficiaries (other than to the extent such Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer of such Liquidating Trust Assets by the Beneficiaries to the F-Squared Liquidating Trust in exchange for the beneficial

interests in the F-Squared Liquidating Trust.  The Beneficiaries shall be treated as the grantors and owners of the F-Squared Liquidating Trust (other than the Liquidating Trust Assets as are allocable to Disputed Claims).  Upon the transfer of the Liquidating Trust Assets, the F-Squared Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets.

As soon as reasonably possible after the Effective Date, (i) the Liquidating Trustee shall make a good faith valuation of the Liquidating Trust Assets, and (ii) the Liquidating Trustee shall establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the F-Squared Liquidating Trust, the Beneficiaries and the Liquidating Trust Committee) for all federal income tax purposes.  The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the F-Squared Liquidating Trust that are required by any Governmental Unit.

C.       *Rights and Powers of the Liquidating Trustee*

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the F-Squared Liquidating Trust, including without limitation, the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement, (2) liquidate the assets transferred to the F-Squared Liquidating Trust on the Effective Date, (3) subject to the Liquidating Trust Agreement, prosecute, settle, abandon or compromise the Retained Causes of Action, (4) make Distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required, (6) subject to the Liquidating Trust Agreement, object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve such objections, and (7) subject to the Liquidating Trust Agreement, employ and compensate professionals and other agents; *provided, however,* that any such compensation shall be made only out of the Liquidating Trust Operational Reserve, in each case to the extent not inconsistent with the status of the F-Squared Liquidating Trust as a liquidating trust within the meaning of United States Treasury Regulation Section § 301.7701-4(d) for federal income tax purposes.

D.       *Fees and Expenses of the F-Squared Liquidating Trust*

The Liquidating Trust Expenses on or after the Effective Date shall be paid in accordance with the F-Squared Liquidating Trust Agreement without further order of the Bankruptcy Court.

E.       *Periodic Reports to Be Filed by the F-Squared Liquidating Trust*

The Liquidating Trustee may file periodic reports regarding the liquidation or other administration of property comprising the F-Squared Liquidating Trust, the Distributions made by it and other matters required to be included in such report in accordance with the Liquidating Trust Agreement.  In addition, the Liquidating Trustee will file tax returns for the F-Squared Liquidating Trust treating the F-Squared Liquidating Trust (other than the Liquidating Trust Assets allocable to Disputed Claims) as a grantor trust pursuant to United States Treasury Regulation Section 1.671-4(a).

F.       *Directors/Officers/Managers and Other Authorized Persons of the Debtors*

On the Effective Date, the authority, power and incumbency of the persons then acting as directors, officers, managers and other authorized persons of the Debtors shall be terminated and such persons shall be deemed to have resigned.

G.       *Liquidation, Dissolution and Termination of the Debtors*

1.       As soon as practicable after the Effective Date, the Liquidating Trustee, on behalf of each Debtor, is authorized to and shall (a) file each Debtor's certificate of dissolution, cancellation, termination or such similar document, together with all other necessary documents, to effect such Debtor's dissolution and/or termination of its

existence under the applicable laws of its state of incorporation, formation or domicile; and (b) complete and file each Debtor's final federal, state and local tax returns.  The filing of each Debtor's certificate of dissolution, cancellation, termination or such similar document shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders, members or the board of directors of each such Debtor.  In addition, the Liquidating Trustee shall be authorized, without any action by the stockholders, members or the board of directors of each Debtor, in the name and on behalf of each Debtor, to complete and file each Debtor's final federal, state and local tax returns.

2.    On the Effective Date, each Debtor shall be deemed to, and shall take all necessary steps to, assign, transfer and distribute to the F-Squared Liquidating Trust the Liquidating Trust Assets, including all of the Debtors' books and records in whatever form and wherever located.

H.    *Preservation of Privileges of the Estates and Debtors*

The Liquidating Trustee shall be the successor to all of the privileges of the estates and the Debtors including, but not limited to, the attorney/client privilege.

I.    *Operations of the Debtors Between the Confirmation Date and the Effective Date*

The Debtors shall continue to operate as Debtors in Possession during the period from the Confirmation Date through and until the Effective Date.

J.    *Establishment of the Administrative Bar Date*

1.    The Plan establishes the Administrative Bar Date, which was approved by the Bankruptcy Court pursuant to the Confirmation Order.

2.    Except as otherwise provided in the Plan or the Confirmation Order, on or before 5:00 p.m., prevailing Eastern time, on the Administrative Bar Date, each holder of an Administrative Claim (to the extent such holder has not previously been paid)  must File with the Bankruptcy Court a request for payment of such Administrative Claim.

3.    Any holder of an Administrative Claim that is required to File a request for payment of such Administrative Claim that does not File such request with the Bankruptcy Court by the Administrative Bar Date, shall be forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtors, and such Administrative Claim shall be deemed released and discharged as of the Effective Date.

K.    *Term of Injunctions or Stays*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed.

L.    *Cancellation of Equity Interests*

On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates and other documents evidencing the Equity Interests shall be deemed automatically cancelled and shall be of no further force, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto, including any obligation of the Debtors to pay any franchise or similar type taxes on account of such Equity Interests, shall be discharged.

M.    *Dissolution of the Creditors' Committee*

As of the Effective Date, the Creditors' Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases.  The retention and employment of the Professionals retained by the Creditors' Committee shall terminate as of the Effective Date; *provided*, *however*, that the Creditors' Committee shall exist, and its Professionals shall be retained, after such date solely with respect to applications Filed pursuant to Sections 328, 330 and 331 of the Bankruptcy Code.

## ARTICLE V.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Initial Distribution Date*

On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the F-Squared Liquidating Trust shall make, or shall make adequate reserves for, the Distributions required to be made under the Plan.

B.    *Disputed Claims Reserve*

1.    Establishment of Disputed Claims Reserve

On the Initial Distribution Date, and after making all Distributions required to be made on such date under the Plan, the F-Squared Liquidating Trust shall establish a separate Disputed Claims Reserve for Disputed Claims, which Disputed Claims Reserve shall be administered by the F-Squared Liquidating Trust. The F-Squared Liquidating Trust shall reserve in Cash or other property, for Distribution on account of each Disputed Claim, the Pro Rata amount that such Disputed Claim would be entitled to receive under the Plan if it were to become an Allowed Claim in its respective Class (or such lesser amount as may be determined by the Liquidating Trustee and the holder of such Disputed Claim or by the Bankruptcy Court in accordance with Article VI.C hereof).

2.    Maintenance of Disputed Claims Reserves

The F-Squared Liquidating Trust shall hold property in the Disputed Claims Reserves in trust for the benefit of the holders of Disputed Claims ultimately determined to be Allowed. The Disputed Claims Reserve shall be closed and extinguished by the F-Squared Liquidating Trust when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan. Upon closure of the Disputed Claims Reserve, all Cash or other property held in the Disputed Claims Reserve shall revest in and become the property of the F-Squared Liquidating Trust. All funds or other property that vest or revest in the F-Squared Liquidating Trust pursuant to this paragraph shall be (a) used to pay the fees and expenses of the F-Squared Liquidating Trust as and to the extent set forth in the Liquidating Trust Agreement, and (b) thereafter distributed on a Pro Rata basis to holders of Allowed Claims.

3.    Federal Income Tax Treatment of Disputed Claims Reserve

Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Liquidating Trustee may either (1) timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by United States Treasury Regulation Section 1.468B-9 or (2) treat such Liquidating Trust Assets as a "complex trust," in either case with the consent of the Liquidating Trust Committee. All parties (including, without limitation, the Liquidating Trustee and the Beneficiaries) shall report consistently with the foregoing for federal, state, and local income tax purposes.

C.    *Subsequent Distributions*

1.    Any Distribution that is not made on the Initial Distribution Date or on any Subsequent Distribution Date because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the F-Squared Liquidating Trust in a Disputed Claims Reserve pursuant to Article V.B and Distributed (in full, in the case of Administrative Expense Claims, Priority Tax Claims or Priority Non-Tax Claims; and up to its Ratable Proportion with respect to the Claims in Class 3) on the first Subsequent Distribution Date after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution paid on a Subsequent Distribution Date in accordance with this Article V.C.

2.    To the extent any holder of an Allowed General Unsecured Claim that received a Distribution on account of such Claim on the Initial Distribution Date or any Subsequent Distribution Date is entitled to receive an additional Distribution on account of such Claim for any reason, including due to an increase in the Ratable

RLF1 13174014v.1

Proportion of such Claim or additional assets becoming part of the Liquidating Trust Fund, the Liquidating Trustee shall, in its discretion, make such additional Distribution to such holder on any Subsequent Distribution Date.

D.    *Record Date for Distributions*

Except as otherwise provided in a Final Order of the Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date. The F-Squared Liquidating Trust shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. In making any Distribution with respect to any Claim, the F-Squared Liquidating Trust shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim Filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are actually known to the F-Squared Liquidating Trust as of the Record Date.

E.    *Delivery of Distributions*

1.    General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the F-Squared Liquidating Trust or its designee, assuming the availability of funds and the economic feasibility of such Distributions, at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such holder or (b) the last known address of such holder if no proof of Claim is Filed or if the Debtors have been notified in writing of a change of address. If any Distribution is returned as undeliverable, the F-Squared Liquidating Trust may, in its discretion, make reasonable efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the F-Squared Liquidating Trust deems appropriate, but no Distribution to any such holder shall be made unless and until the F-Squared Liquidating Trust has determined the then-current address of such holder, at which time the Distribution to such holder shall be made to the holder without interest. Amounts in respect of any undeliverable Distributions made by the F-Squared Liquidating Trust shall be returned to, and held in trust by, the F-Squared Liquidating Trust until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth below in Article V.E.3. The F-Squared Liquidating Trust shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided*, *however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Liquidating Trust Agreement.

2.    Minimum Distributions

Notwithstanding anything herein to the contrary, if a Distribution to be made to a holder of an Allowed Claim on the Initial Distribution Date or any subsequent date for Distributions would be $50 or less in the aggregate, no such Distribution will be made to that holder unless a request therefor is made in writing to the Liquidating Trustee.

3.    Unclaimed Property

Except with respect to property not Distributed because it is being held in the Disputed Claims Reserve, Distributions that are not claimed by the expiration of six (6) months from the date of the relevant Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the F-Squared Liquidating Trust, and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of that six month period, the claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the F-Squared Liquidating Trust to attempt to locate any holder of an Allowed Claim. All funds or other property that vest or revest in the F-Squared Liquidating Trust pursuant to this paragraph shall be (a) used to pay the fees and expenses of the F-Squared Liquidating Trust as and to the extent set forth in the Liquidating Trust Agreement, and (b) thereafter distributed on a Pro Rata basis to holders of Allowed Claims. In the event the Liquidating Trustee holds Liquidating Trust Assets after all Liquidating Trust Operating Expenses and Distributions are made, such remaining Liquidating Trust Assets shall be liquidated to Cash and distributed to some charitable organization of the Liquidating Trustee's choice,

assuming such distribution is economically feasible. Neither unclaimed property nor any Liquidating Trust Assets, shall escheat to any federal, state or local government or other entity.

F.      *Manner of Cash Payments Under the Plan or the Liquidating Trust Agreement*

Cash payments made pursuant to the Plan or the Liquidating Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the F-Squared Liquidating Trust or by wire transfer from a domestic bank, at the option of the F-Squared Liquidating Trust.

G.      *Time Bar to Cash Payments by Check*

Checks issued by the F-Squared Liquidating Trust on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Article V.I. shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of six (6) months from the Effective Date or ninety (90) days after the date of issuance thereof.  After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the F-Squared Liquidating Trust as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code and be distributed as provided in Article V.E.3.

H.      *Limitations on Funding of Disputed Claims Reserves*

Except as expressly set forth in the Plan, neither the Debtors nor the Liquidating Trustee shall have any duty to fund the Disputed Claims Reserve.

I.      *Compliance with Tax Requirements*

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Liquidating Trustee may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any Governmental Unit.  Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any Governmental Unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article V.E.1.

J.      *No Payments of Fractional Dollars*

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

K.      *Post-Petition Interest on Claims*

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Except as expressly provided herein or in a Final Order of the Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

L.      *No Distribution in Excess of Allowed Amount of Claim*

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

M.      *Setoff and Recoupment*

The F-Squared Liquidating Trust may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtors, the Estates or the F-Squared Liquidating Trust may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates or the F-Squared Liquidating Trust of any right of setoff or recoupment that any of them may have against the holder of any Claim.

## ARTICLE VI.

### DISPUTED CLAIMS

A.      *No Distribution Pending Allowance*

Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.

B.      *Resolution of Disputed Claims*

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to the exclusion of all others (except as to the Professionals' applications for allowances of compensation and reimbursement of expenses under Sections 330 and 503 of the Bankruptcy Code) to make, File, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims. The costs of pursuing the objections to Claims shall be borne by the F-Squared Liquidating Trust. From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

C.      *Estimation of Claims*

At any time, (a) prior to the Effective Date, the Debtors, and (b) subsequent to the Effective Date, the Liquidating Trustee, may request that the Bankruptcy Court estimate any Claim to the extent permitted by Section 502(c) of the Bankruptcy Code.

D.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under Section 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, provided that such Cause of Action is a Retained Cause of Action, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors.

E.      *Adjustment to Claims Without Objection*

Any Claim or Equity Interest that has been paid or satisfied, or any Claim or Equity Interest that has been amended or superseded, may be marked as satisfied, adjusted or expunged on the Claims Register by the Noticing Agent at the direction of the Debtors or the Liquidating Trustee, as applicable, without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

F.      *Amendments to Claims or Interests*

After the Confirmation Date, a Claim or Interest may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such

Claim or Interest solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority.

**EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED, ANY AND ALL HOLDERS OF PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL NOT BE TREATED AS CREDITORS FOR PURPOSES OF VOTING AND DISTRIBUTION PURSUANT TO BANKRUPTCY RULE 3003(c)(2) AND PURSUANT TO THE GENERAL BAR DATE ORDER, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

## ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Rejection of Executory Contracts and Unexpired Leases*

1.      Subject to Article VII.C. below, on the Effective Date, except to the extent that a Debtor either previously has assumed, assumed and assigned or rejected an executory contract or unexpired lease by an order of the Bankruptcy Court, including, but not limited to, the Sale Order, or has filed a motion to assume or assume and assign an executory contract or unexpired lease prior to the Effective Date, each executory contract and unexpired lease entered into by a Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be rejected pursuant to section 365 of the Bankruptcy Code.  Each such contract and lease will be rejected only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to Sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of the Debtors, their Estates and all parties in interest in the Chapter 11 Cases.

2.      Notwithstanding anything contained in the Plan to the contrary, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the rights of the Debtors or the Liquidating Trustee, as applicable, to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.  The deemed rejection provided for in Article VII.A.1 of the Plan shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Debtors following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Claims created by the rejection of executory contracts and unexpired leases pursuant to Article VII.A of the Plan must be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after service of notice of the Effective Date.  Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Article VII.A for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX.D.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan.

C.      *Debtors' Insurance Policies*

Except for the Rejected Insurance Policies (if any) which shall be rejected pursuant to Article VII.A.1., nothing in the Plan, the Confirmation Order, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Debtors' insurance policies or modifies the coverage or benefits provided thereunder or the terms or conditions thereof or diminishes or impairs the enforceability of the Debtors' insurance policies.

## ARTICLE VIII.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.    *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.    The Confirmation Order has become a Final Order.

2.    The Confirmation Order shall be in full force and effect.

3.    Notwithstanding the foregoing, the Debtors, in consultation with the Committee, reserve the right to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

B.    *Establishing the Effective Date*

The calendar date to serve as the Effective Date shall be a Business Day of, on or promptly following the satisfaction or waiver of all conditions to the Effective Date, which date will be selected by the Debtors in consultation with the Creditors' Committee. On or within two (2) Business Days of the Effective Date, the Debtors shall file and serve a notice of occurrence of the Effective Date. Such notice shall contain, among other things, the Administrative Bar Date, the Professional Claims Bar Date and the deadline to file proofs of claim relating to damages from the rejection of any executory contract or unexpired lease pursuant to the terms of the Plan.

## ARTICLE IX.

## RELEASE, INJUNCTIVE AND RELATED PROVISIONS

A.    *Compromise and Settlement*

Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Equity Interests.

B.    ***Releases by the Debtors***

**1.    Notwithstanding anything contained in the Plan to the contrary, effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors release, waive and discharge the Releasees from any and all Causes of Action, claims, debts, obligations, suits, damages, actions, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, based in whole or in part upon any act or omission in connection with the Releasees' exercise of their business judgment as set forth in the Sale Order.**

2.    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article IX.B pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all holders of Claims; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Debtors or the Liquidating Trustee.

C.    *__Exculpation__*

 Notwithstanding anything contained in the Plan to the contrary, effective as of the Effective Date, the Exculpated Parties shall not have or incur any liability for any act or omission taken or not taken between the Petition Date and the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the post-petition portion of the Sale, the negotiation and Filing of the Disclosure Statement, the Plan or any document implementing the Plan, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of executory contracts and leases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be Distributed under the Plan, except for their willful misconduct or gross negligence or any obligations that they have under or in connection with the Plan or the transactions contemplated in the Plan, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

D.    *__Injunction__*

 1.    **Pursuant to Section 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan will not discharge the Debtors; *provided*, *however*, upon confirmation of the Plan, the occurrence of the Effective Date, and Distributions hereunder, the holders of Claims or Equity Interests may not seek payment or recourse against or otherwise be entitled to any Distribution from the Liquidating Trust Assets except as expressly provided in this Plan and the Liquidating Trust Agreement.**

 2.    **Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest, from:**

  (a)    **commencing or continuing in any manner any action or other proceeding of any kind against any of the Debtors' Estates, the F-Squared Liquidating Trust, their successors and assigns, and any of their assets and properties;**

  (b)    **enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor's Estate, the F-Squared Liquidating Trust, their successors and assigns, and any of their assets and properties;**

  (c)    **creating, perfecting or enforcing any encumbrance of any kind against any Debtor's Estate, the F-Squared Liquidating Trust, their successors and assigns, and any of their assets and properties;**

  (d)    **asserting any right of setoff or subrogation of any kind against any obligation due from any Debtor's Estate, the F-Squared Liquidating Trust or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of Claim; or**

  (e)    **commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.**

 3.    **From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, their Estates, their successors and assigns, and any of their assets and properties, any suit, action or other proceeding, on account of or respecting any claim, Claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.**

E.    *Releases of Liens*

 Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, to the extent such exist, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors and the Liquidating Trustee.

F.      *Substantive Consolidation*

1.      The Plan shall serve as a motion by the Debtors seeking entry of an order substantively consolidating all of the Estates of all of the Debtors into a single consolidated estate for all purposes associated with confirmation and consummation of the Plan.  Intercompany Claims and Intercompany Interests are deemed to be satisfied and resolved by the substantive consolidation provided for herein.

2.      The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the substantive consolidation of the Debtors and their respective Estates for all purposes relating to the Plan, including for purposes of voting, confirmation and Distributions.  If this substantive consolidation is approved, then for all purposes associated with the confirmation and consummation of the Plan, all assets and liabilities of the Debtors shall be treated as though they were merged into a single economic unit, and all guarantees by any Debtor of the obligations of any other Debtor, to the extent such exist, shall be considered eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors.  Moreover, (a) no Distribution shall be made under the Plan on account of any Claim held by any one of the Debtors against any of the other Debtors and such Intercompany Claims will be extinguished, (b) no Distribution shall be made under the Plan on account of any Intercompany Interest held by any one of the Debtors in any of the other Debtors except to the extent necessary to effect the substantive consolidation provided for herein, (c) all guaranties of any one of the Debtors of the obligations of any of the other Debtors, to the extent such exist, shall be eliminated so that any Claim against any one of the Debtors, and any guaranty thereof executed by any of the other Debtors, shall be one obligation of the consolidated Debtors' Estates, and (d) every Claim that is timely Filed or to be Filed in the Chapter 11 Cases of any of the Debtors shall be deemed Filed against the consolidated Estates and shall be one Claim against, and one obligation of, the Estates.

3.      In addition, notwithstanding any provision of the Plan to the contrary, any Holder of multiple Allowed Claims against more than one Debtor that arise from the contractual, joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation or other similar circumstances, shall be entitled to *one* Allowed Claim that, in the aggregate, does not exceed the amount of the underlying Claim giving rise to such multiple Claims.  Claims against more than one of the Debtors arising from the same injury, damage, cause of action or common facts shall be Allowed only once as if such Claim were against a single Debtor.

4.      Any alleged defaults under any applicable agreement, including executory contracts and unexpired leases, with the Debtors arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.

5.      As soon as practicable after the Effective Date, the Liquidating Trustee is authorized to and shall submit an order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes each of the Chapter 11 Cases except the Parent's Chapter 11 Case.  The Debtors' consolidated estate shall be administered through the Parent's Chapter 11 Case.  Once the Plan has been fully administered, the Liquidating Trustee shall file a final report and a motion seeking a final decree in accordance with Local Rule 3022-1.

G.      *Preservation of Rights of Action*

1.      Vesting of Causes of Action

(a)    Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that the Debtors may hold against any Entity shall vest upon the Effective Date in the F-Squared Liquidating Trust.

(b)    Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Retained Causes of Action, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

(c) Retained Causes of Action and any recoveries therefrom shall remain the sole property of the F-Squared Liquidating Trust (for the sole benefit of the holders of Allowed Claims).

2. Preservation of All Retained Causes of Action Not Expressly Settled or Released

(a) Unless a Retained Cause of Action against a holder or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors and the Liquidating Trustee expressly reserve such Retained Cause of Action for later adjudication by the Liquidating Trustee (including, without limitation, Retained Causes of Action not specifically identified or described in the Plan Supplement or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Retained Causes of Action have been released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article IX.B.1) or any other Final Order (including the Confirmation Order). In addition, the Liquidating Trustee expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased property from the Debtors, should assume that any such obligation, transfer or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of Claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such Entity's proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or Liquidating Trustee have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent or unliquidated.

## ARTICLE X.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article XI.B;

4. ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

RLF1 13174014v.1

5.  decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date; *provided*, *however*, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

6.  enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, Plan Supplement or the Disclosure Statement;

7.  resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.  issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.  enforce Article IX.A, Article IX.B, and Article IX.B hereof;

10.  enforce the Injunction set forth in Article IX.D hereof;

11.  resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12.  enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.  resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement;

14.  resolve any disputes and determine any other matters that may arise in connection with or related to the Sale Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Sale Order;

15.  hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; and

16.  enter an order and/or the decree contemplated in Fed. R. Bankr. P. 3022 concluding the Chapter 11 Cases.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

A.  *Payment of Statutory Fees*

All fees due and payable pursuant to 28 U.S.C. § 1930 prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the F-Squared Liquidating Trust shall pay any and all such fees when due and payable, and the Liquidating Trustee shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Notwithstanding the substantive consolidation of the Debtors provided for in the Plan, each and every one of the Debtors shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

B.    *Modification of Plan*

Subject to the limitations contained in the Plan: (1) the Debtors, in consultation with the Committee, reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Liquidating Trustee, as the case may be, may amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

C.    *Revocation of Plan*

The Debtors, in consultation with the Committee, reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

D.    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

E.    *Governing Law*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

F.    *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

G.    *Section 1146 Exemption*

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

H.    *Section 1125(e) Good Faith Compliance*

The Debtors, the Creditors' Committee and its individual members, and each of their respective Representatives, shall be deemed to have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

I.    *Further Assurances*

The Debtors, the Creditors' Committee, the Liquidating Trustee, all holders of Claims receiving Distributions hereunder, the holders of Equity Interests in the Debtors and all other parties in interest shall, from

23

time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

J.       *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Plan Proponents shall be sent by first class U.S. mail, postage prepaid as follows:

To the Debtors:

> F-Squared Investment Management, LLC
> 945 Concord Street
> Framingham, Massachusetts 01701
> Attn:  David N. Phelps

> *with a copy to:*

> Richards, Layton & Finger, P.A.
> One Rodney Square
> 920 North King Street
> Wilmington, Delaware 19801
> Attn.:  Russell C. Silberglied, Esq. and Zachary I. Shapiro, Esq.

To the Creditors' Committee:

> Brown Rudnick LLP
> One Financial Center
> Boston, Massachusetts 02111
> Attn:  Sunni P. Beville, Esq.

K.       *Filing of Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

L.       *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Fed. R. Bankr. P. 3020(e) and 7062.

M.       *Aid and Recognition*

The Plan Proponents or Liquidating Trustee, as the case may be, shall, as needed to effect the terms hereof, request the aid and recognition of any court or judicial, regulatory or administrative body in any other nation or state.

*  *  *  *  *

24

Dated:  October 28, 2015
       Wilmington, Delaware

F-Squared Investment Management, LLC (for itself and on behalf of its Debtor affiliates)

By: /s/ *David N. Phelps*
       Name:  David N. Phelps
       Title:  Chief Restructuring Officer

25