**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| F-SQUARED INVESTMENT | ) | Case No. 15-11469 (LSS) |
| MANAGEMENT, LLC, *et al.*[1] | ) | Jointly Administered |
| | ) | |
| Debtor. | ) | **Re: Docket No. 1144** |

**OBJECTION TO MOTION OF THE LIQUIDATING TRUSTEE, PURSUANT TO BANKRUPTCY RULE 9019, FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AGREEMENT BETWEEN THE LIQUIDATION TRUSTEE AND THE PRESENT DEFENDANTS**

George McClelland ("G. McClelland"), Charles Hart, Geordie McClelland, Graham Hart, Hazel McClelland, Jacquelyn McClelland, Lindsay Hart, McClelland Irrevocable Grantor Trust, Quinn McClelland Hart, Lindsay McClelland and Agnes Carol McClelland (collectively, "the McClelland Defendants") and Ann Aghababian ("Aghababian" and together with the McClelland Defendants the "Defendants") by and through their undersigned counsel, object to the *Motion of the Liquidating Trustee, Pursuant to Bankruptcy Rule 9019, For Entry of an Order Approving the Settlement Agreement Between the Liquidating Trustee and the Present Defendants* [D.I. 1144] (the "Present Settlement"), and state as follows:

**INTRODUCTORY STATEMENT**

1. The McClelland Defendants and Aghababian object to the proposed settlement because they believe it is inequitable and without substantive support.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: F-Squared Investment Management, LLC (9247), F-Squared Investments, Inc. (0788), F-Squared Retirement Solutions, LLC (9247), F-Squared Alternative Investments, LLC (9247), F-Squared Solutions, LLC (9247), Squared Institutional Advisors, LLC (9247), F-Squared Capital, LLC (5257), AlphaSector LLS GP 1, LLC (3342), and Active Index Solutions, LLC (0788). The Debtors' address is Verdolino & Lowey, P.C., 124 Washington Street, Suite 101, Foxboro, Massachusetts 02035, Attn: Craig R. Jalbert.

2.      The proposed settlement is inequitable because it extinguishes claims the Craig Jalbert (the "Trustee"), as trustee of the F2 Liquidating Trust, leveled against Howard Present ("Present") and his family for the return of the funds distributed to them to pay tax liabilities of F-Squared Investment Management, LLC and its subsidiaries (collectively, "F-Squared" or the "Debtors") at the same time the Trustee continues to force the Defendants and others similarly situated to expend substantial resources to defend against the very same claims.  The Trustee reaches this proposed compromise with Present and his family members even though the Trustee has repeatedly pointed to Present as the reason for the "downfall" of F-Squared.

3.      Worse yet, the proposed settlement offers Present a financial reward for "cooperating" with the Trustee in his pursuit of the liquidating trust's claims against Present's co-defendants, Newfound Research LLC and its principals.  Success in that case requires proof of factual allegations and a theory of liability that can only be described as antithetical to the factual claims pending against the Defendants (not to mention dozens of others).

4.      The Trustee throughout his prosecution of the cases against the Defendants has maintained that F-Squared was insolvent from the inception because it knowingly undertook false advertising of its AlphaSector product rendering the product itself a fraud that would, claims the Trustee, inexorably lead to massive liabilities and thus the firm's downfall.  Now the Trustee has apparently embraced a contrary set of facts:  that Present's advertisement of the AlphaSector product was not knowingly false, but rather that Present was duped by the Newfound Research's principals such that he and F-Squared were the victims of fraud.[2]

5.      The Trustee declines to provide a detailed explanation for his proposed settlement and is silent as to the rationale supporting it. The Trustee does not review the merits of the claims

---

[2]     Indeed, the Court should consider the Trustee's embrace of Present's view of the facts, i.e., that F-Squared was a victim, not a perpetrator, of fraud when assessing the validity of the Trustee's claims against the McClelland Defendants and those similarly situated.

against Present; he does not assess the merits of Present's claims against the bankruptcy estate; and the Trustee makes scant reference to the reasons the estate could possibly benefit from Present's cooperation.

## **GROUNDS FOR OBJECTION**

6.      **Release of Present and Family Members.**  The Settlement before the court seeks to release Present and members of his family and HB Present Holdings, LLC from a panoply of claims for no payment whatsoever.  Currently pending against Present are literally millions of dollars of claims.  Thousands more are pending against members of his family and HB Present Holdings, LLC.[3]  Of that amount, there is a claim for $5,774,406.80 to recover distributions to pay taxes—the very same claims the Trustee is pursuing against the McClelland Defendants, Aghababian and other innocent investors.  Identical claims are brought against his family members and HB Present holdings, LLC for a total of $644,604.[4]  In addition, the Trustee has pending claims against Present to recover $2,500,000 in severance payments,[5] $4,584,253.55 in legal costs paid on his behalf to two law firms for Present's failed defense; and $500,000 paid in connection with Present's separation agreement.

7.      As to those claims, little reason is given for abandoning them.  The Trustee does, however, allege that it would be difficult to recover any judgment obtained.  That assertion is at best debatable.  Present raised the same arguments in connection with the hearing for the imposition of a civil judgment in *Securities and Exchange Commission v. Howard B. Present*,

---

[3]    In ¶109 of his amended complaint against Present the Trustee alleges: "Thus, even though Mr. Present's wrongdoing led to the downfall of F-Squared and to the Bankruptcy Case, and even though F-Squared was insolvent from the beginning of its use of the AlphaSector Index, Mr. Present received at least $15,158,660.40."
[4]    The Motion recites approximately $750,000 in claims against other Present defendants are being resolved.
[5]    Present was terminated in November of 2014 just before F-Squared finalized its settlement with the SEC.

14-cv-14692-LTS (D. Mass 2014) (the "SEC Action") and it was rejected. In his order imposing the disgorgement and a fine, Federal District Court Judge Leo Sorokin noted:

> Present asserts that he is effectively insolvent…Assuming and accepting, without deciding, that he is presently insolvent, the Court finds that Present retains substantial earning capacity, in large part because of his experience in the financial industry. Accordingly, the Court finds further information regarding Present's current financial status unnecessary.[6]

The Trustee should explain while he rejected this finding.

8. Next, somewhat quizzically, the Trustee asserts his: "claims against Howard Present, as outlined in the Howard Present Complaint, are factually and legally complex and far ranging." While claiming he is confident he would prevail, the Trustee declares the "Liquidating Trust could incur sizable and protracted litigation expense before obtaining a final judgment." That is apparently no deterrent from pursuing the McClelland Defendants (and dozens of others) yet he chooses to stop his pursuit of Present whom he alleges is the reason for the Debtors' "downfall."[7] The Trustee is required to much more completely explain his thinking about the supposed "sizable and protracted litigation expense" for the court to evaluate the proposed settlement.

9. **Benefits of Subordination of Present's Claims Unknown.** The benefits to the Liquidating Trust, if any, from Present's agreement to subordinate his proofs of claim against the Trust are likewise impossible to discern from the filed settlement agreement. The claims themselves are only very generally described as "based on certain severance and indemnification provisions in his employment contract with the Debtors." No further detail is provided, nor are

---

[6] *Sec. & Exch. Comm'n v. Present*, 2018 WL 1701972, at *5 (D. Mass. Mar. 20, 2018).
[7] See *supra* note 3.

the proofs of claim attached.[8] It is hard to imagine that there are not meritorious (and easily proven) defenses to Present's indemnification and employment agreements in light of the outcome of the SEC Action, but without more there is no way to tell. If the Proofs of Claim are without merit and easily disallowed, as we expect is the case, then the value of the settlement is *de minimus*.

10. **Buying Cooperation.** Finally, the Trustee fails to explain the need to reward Present for his cooperation and testimony. The Trustee's decision to make this commitment is both curious and troubling. The settlement grants Present a subordinated $5 million interest in the trust. It extends to Present the opportunity to have that interest paid via his future cooperation and assistance in the Trustee's prosecution of claims brought against his co-defendants: David J. Morton, Corey Hoffstein, Thomas B. Rosedale and Newfound Research LLC (the "NFR Defendants"). He could receive up to 20% of recoveries from the action against the NFR Defendants.

11. The theories in the complaint against the NFR Defendants are grounded in factual allegations which are inconsistent with (if not antithetical to) the factual allegations made in his claims against the McClelland Defendants and Aghababian (and dozens of other innocent defendants). At bottom, to succeed on these claims, the Trustee must prove the NFR Defendants willfully misled Present and therefore F-Squared about the existence of a live track record. If that is what the Trustee believes to have occurred, the Court should consider the impact of the Trustee's admission in this regard when assessing the validity of the Trustee's claims against the Defendants and those similarly situated.

---

[8] The proofs of claim are not available on the public claims agent website because they apparently have been determined to include personal information.

12. The Defendants are each targets of avoidance actions brought by the Trustee to recover a combined amount in excess of $6 million. The vast majority of the Trustee's claims—over $5 million—arise from F-Squared's quarterly distributions paid pursuant to F-Squared's Operating Agreement to cover estimated income taxes owed by the Defendants based on the "pass through" to their personal tax returns of F-Squared's estimated quarterly profit.

13. The Complaints include no allegations against the Defendants that they engaged in unethical or illegal conduct (unlike the claims against Present). Instead, the Trustee asserts that the distributions to the Defendants are avoidable as constructively fraudulent transfers because they were made at a time F-Squared was insolvent. The Trustee's theory of insolvency is novel.[9] He claims F-Squared was "insolvent from the inception" from its use of a false track record in advertising its AlphaSector product because that meant it "generated a great majority of its revenue by means of illegal activity almost certain to give rise, as some point, to massive liabilities" and in turn insolvency.[10]

14. F-Squared's claim of a live track record was made by and under the direction of Present as its Chief Executive Officer. In the SEC Action, Present attempted to deny the SEC's charges against him by contending that he was duped into making those claims by the NFR Defendants representations that the live track record existed.

15. On October 5, 2017, following a lengthy jury trial, Present was found to have violated Section 206 of the Investment advisors Act of 1940 in the SEC Action. On March 20, 2018, Federal District Judge Leo Sorokin, while finding F-Squared's AlphaSector was "not a sham product," permanently enjoined Present from violating the Act, fined Present $1,575,000

---

[9] The McClelland Defendants and Agababian have pending motions to dismiss which reject the Trustee's theory of insolvency and this objection in no way is intended to give credence or support to the Trustee's claims which are thoroughly rejected.

[10] See, e.g., Complaint to Avoid and Recover Transfers at ¶17, Jalbert v. George McClelland, Adv. Pro. 17-50758 (Bankr. D. Del. 2017), [D.I. 1].


and ordered him to disgorge $10,849,604, plus prejudgment interest.[11]  In arriving at those orders, the court noted the jury had found Present "acted with scienter in the form of recklessness," which the judge defined as "an extreme departure from the standards of ordinary care…"[12]

16.     Despite this, the Trustee appears to have adopted Present's view that it was he and F-Squared who were defrauded.  Indeed, the Amended Complaint against the NFR Defendants includes section headers that state:  "In 2008, The NFR Defendants Fraudulently Induce F-Squared to Enter Into The 2008 Data Provider Agreement by Misrepresenting That Morton Financial Had Been Using The Sector Rotation Model to Manage Client Assets For Many Years" and "The NFR Defendants Repeatedly Confirm Morton Financials Historical Use Of The Sector Rotation Model And Fraudulently Induce F-Squared To Enter Into The 2010 Data Provider Agreement."[13]  With Present's help, the Trustee seeks to prove F-Squared was a victim, not the perpetrator, of fraud.

17.     That proof, of necessity, would mean F-Squared did not knowingly engage in illegal activity and thus could not (even under the Trustee's novel theory) have been "insolvent from its inception."  Put otherwise, pursuit of the investor defendants like the McClelland Defendants and Aghababian necessarily requires proof of facts inconsistent with facts the Trustee is now is ready to pay to elicit from Present.  The Trustee is free to move in this direction but should drop his claims against the innocent investors he has been pursuing for months on his novel "insolvent from the inception" theory.

---

[11]     See Sec. & Exch. Comm'n v. Present, 2018 WL 1701972, at *1 (D. Mass. Mar. 20, 2018).
[12]     Id.
[13]     See, Amended Complaint and Objection to Claims Pursuant to Bankruptcy Code Section 502 and Federal Rule of Bankruptcy Procedure 3007 at 11, 20, Jalbert v. Present, et. al., Adv. Pro. 17-50691 (Bankr. D. Del. 2018) [D.I. 66].

18. Finally, as a practical matter, even if the Trustee's flip flop on his theory of the facts is credited, there is no reason to "pay" Present for his cooperation. Present has given lengthy, detailed testimony on these very same facts in the SEC Action. In fact, Mr. Present testified for the better part of 3 trial days. Mr. Morton and Mr. Hoffstein also testified. Mr. Present's beliefs on the role of the NFR Defendants and the track record is already established under oath.

19. In summary, if there is a recovery against NFR or the NFR Defendants, that recovery should go to other parties—not Mr. Present.

## **OBJECTION**

20. Compromises are favored in bankruptcy. See *In re: Martin,* 91 F.3d 389, 393 (3d Cir. 1996). But the courts must "carefully examine settlement before approving them." *In re: Nutraquest*, 434 F.3d 639, 644 (3d. Cir. 2006). It must value the balance of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Martin* at 393. To do so, a court must "apprise[ ] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate[ ] the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." *In re Nortel Networks, Inc.,* 522 B.R. 491, 509 (Bankr. D. Del. 2014) (quoting *In re Capmark Fin. Grp. Inc*., 438 B.R. 471, 514 (Bankr. D. Del. 2010).

21. "Whether to approve a settlement is within the sound discretion of the court…" and while it may not substitute its judgment for that of the Trustee and may take into account the Trustee's business judgment it must still undertake "its own, independent, reasoned analysis of the claims at issue." *In re NovaPro Holding, LLC*, 2018 WL 2102323 at *4 (Bankr. D. Del. May

8

4, 2018). "The Trustee bears the burden of persuasion to provide the court with sufficient information to conclude that the settlement is within the reasonable range of litigation possibilities." *Id*.

22.     This Motion is devoid of the information necessary for the court or creditors to assess the merits of the settlement.  It makes conclusory statements without the kind of analysis courts require to make the independent assessment case law requires.  The settlement as pled at best is of questionable value to the Liquidating Trust and unnecessarily rewards the very party who the Trustee has accused of being the downfall of the debtors.  It does so to allow the Trustee to pursue claims that require proof that is inconsistent with claims made against dozens of other parties who have been forced to incur thousands of legal fees.  For all these reasons, it should be denied.

# **CONCLUSION**

WHEREFORE, the McClelland Defendants and Aghababian respectfully request that (A) the Court deny the Motion to approve the Present Settlement and (B) grant such other and further relief as may be just.

| | |
|---|---|
| Dated: July 5, 2018<br>Wilmington, Delaware | **POTTER ANDERSON & CORROON LLP**<br><br>/s/ *D. Ryan Slaugh*<br>Jeremy W. Ryan (DE Bar No. 4057)<br>D. Ryan Slaugh (DE Bar No. 6325)<br>1313 North Market Street, Sixth Floor<br>P.O. Box 951<br>Wilmington, DE  19801<br>Telephone:  (302) 984-6000<br>Facsimile:  (302) 658-1192<br>Email:  jryan@potteranderson.com<br>           rslaugh@potterandercon.com<br><br>-and-<br><br>**MCLANE MIDDLETON, PROFESSIONAL ASSOCIATION**<br>Joseph A. Foster, Esq.<br>900 Elm Street<br>P.O. Box 326<br>Manchester, NH  03105-0326<br>Telephone:  (603) 628-1175<br>Facsimile:  (603) 625-5650<br>Email:  joseph.foster@mclane.com<br><br>*Counsel to Geordie McClelland* |