## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F-SQUARED INVESTMENT MANAGEMENT, LLC, *et al.*,[1] | Case No. 15-11469 (LSS) |
| Debtors. | **Re: D.I. 1144, 1149, 1153, 1154, 1155, 1156** |
| | (Jointly Administered) |

### TRUSTEE'S REPLY TO OBJECTIONS
### TO MOTION TO APPROVE SETTLEMENT AGREEMENT
### BETWEEN THE TRUSTEE AND THE PRESENT DEFENDANTS

Craig Jalbert (the "Trustee"), as trustee of the F2 Liquidating Trust (the "Liquidating Trust") of the estates of F-Squared Investment Management, LLC and its subsidiaries (collectively, "F-Squared" or the "Debtors"), by and through his undersigned counsel, hereby submits this reply (the "Reply") to the objections and joinders thereto to the *Motion of the Liquidating Trustee, Pursuant to Bankruptcy Rule 9019, for Entry of an Order Approving the Settlement Agreement Between the Liquidating Trustee and the Present Defendants* [D.I. 1144] (the "Motion") and respectfully states as follows:

### BACKGROUND

1.       The Trustee, in accordance and compliance with the confirmed plan and liquidation trust agreement in these Chapter 11 Cases, entered into the Settlement Agreement to

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: F-Squared Investment Management, LLC (9247), F-Squared Investments, Inc. (0788), F-Squared Retirement Solutions, LLC (9247), F-Squared Alternative Investments, LLC (9247), F-Squared Solutions, LLC (9247), Squared Institutional Advisors, LLC (9247), F-Squared Capital, LLC (5257), AlphaSector LLS GP 1, LLC (3342), and Active Index Solutions, LLC (0788). The Debtors' address is Verdolino & Lowey, P.C., 124 Washington Street, Suite 101, Foxboro, Massachusetts 02035, Attn: Craig R. Jalbert.

resolve the claims and potential claims between the Liquidating Trust and the Present

Defendants[2] and filed the Motion to obtain this Court's approval of the Settlement Agreement.

    2.      Using his business judgment, and in accordance with his fiduciary duties, the

Trustee entered into the Settlement Agreement based on his evaluation of the following facts and

circumstances, each of which is discussed further below:

- Howard Present has filed in these cases claims exceeding $11,000,000 for asserted unpaid severance, health insurance, other contractual obligations, and indemnified expense, which amounts constitutes nearly 1/3 of the overall claims asserted.

- The jury verdict in the SEC Action (as defined below) did not include a finding as to Howard Present's state of mind sufficient for the Trustee to "easily defeat" these claims based on claim preclusion or similar theories.

- Disallowing Howard Present's claims would thus require the Trust to expend substantial additional funds for legal fees and related costs.

- Similarly, the Trustee's affirmative causes of action against Howard Present would require extensive litigation. The SEC Action did not address breach of fiduciary duty and related claims, for which the Trustee seeks damages. Moreover, the Trustee's claims against Howard Present raise factual and legal issues that are unlike the issues arising in the Trustee's avoidance actions against certain other defendants, including the Objecting Defendants. For example, the Trustee seeks to avoid and recover certain amounts from Howard Present that F-Squared was, indeed, contractually obligated to pay. As a result, these affirmative claims and causes of action would require the Trust to expend substantial additional legal fees and related costs over what is required in the other avoidance actions.

- If the Trustee obtains a judgment against Howard Present, he is likely to face significant difficulties in recovering on that judgment. Howard Present provided a sworn financial statement to the Trustee (as well as to the District Court in the SEC Action) asserting that he is insolvent and has no material assets from which a recovery could be gained. Moreover, Howard Present must now also seek to satisfy the $12,424,604 judgment the SEC obtained against him. Collection, if even possible, on any judgment the Trustee may obtain against Howard Present, could take years.

- Further, the Settlement Agreement reduces and subordinates Howard Present's claims, and provides that any recovery to Howard Present would come only out of a limited pool of potential funds resulting from a particular future litigation

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

recovery, and only after all other creditors were paid in the full amount of their allowed claims.

- Without Howard Present's claims diluting the claims pool, recoveries to other creditors of F-Squared would materially increase under the terms of the Settlement Agreement.

3.    Certain objections have been filed to the Motion, each by one or more parties in interest who are themselves defendants in other adversary proceedings commenced in these Chapter 11 cases by the Trustee to recover dividends and other transfers for no value or less than fair value while the debtors were insolvent, as follows:

- On June 29, 2018, certain defendants (the "Schiff Hardin Defendants") filed the *Defendants' Objection to Proposed Settlement Between the Trustee and the Present Defendants* [D.I. 1149] (the "Schiff Hardin Objection").

- On July 5, 2018, certain other defendants (the "McLane Defendants") filed the *Objection to Motion of the Liquidating Trustee, Pursuant to Bankruptcy Rule 9019, for Entry of an Order Approving the Settlement Agreement Between the Liquidation Trustee and the Present Defendants* [D.I. 1155] (the "McLane Objection" and, together with the Schiff Hardin Objection, the "Objections").

-  Other groups of defendants filed joinders to the Schiff Hardin Objection and the McLane Objection.  See D.I. 1153, 1154, and 1156 (the "Joinders" and defendants filing the Joinders, together with the Schiff Hardin Defendants and the McLane Defendants, the "Objecting Defendants").

4.    The McLane Objection and the Joinders joining the McLane Objection are based on incorrect assumptions regarding the claims at issue between the Present Defendants and the Trustee.  The Trustee addresses those incorrect assumptions in his Reply below.

5.    Additionally, certain Objecting Defendants raised concerns regarding (a) the Present Defendants' ability to participate in the Bankruptcy Cases and the adversary proceedings filed therein as witnesses or deponents; and (b) the scope of the releases granted by the Trustee in the Agreement.  After receipt of those objections, the Trustee has now negotiated specific language to resolve these concerns with these Objecting Defendants and the Present Defendants,

and this curative language is set forth in paragraph 11 of the amended proposed order attached hereto as **Exhibit A** (the "Amended Order").

6.      Lastly, certain Objecting Defendants also raised discovery concerns regarding their possible access to documents that in the future might be provided to the Trustee by Howard Present under the terms of the Settlement Agreement.  As set forth more fully below, no discovery issue is ripe for the Court's determination at this point, because no documents have been provided to the Trustee.  As a result, the Trustee does not know whether any non-privileged documents relevant to the Objecting Defendants' cases (or any non-privileged documents, or any documents at all) will be provided, and if any documents are in fact someday provided, the Trustee is unable to determine as of yet whether he will be able to voluntarily produce whatever those might be to others without the need for the Court's involvement.  In any event, the Trustee will comply with the Federal Rules of Bankruptcy Procedure and with the procedures orders that have been entered in the pending adversary proceedings.[3]

7.      Because the Settlement Agreement is an appropriate exercise of the Trustee's business judgment and provides for a result that is fair and in the best interests of the estate, and is well above the lowest point in the range of reasonableness, the Trustee respectfully requests that the Motion be granted and that the Court enter the Amended Order approving the Settlement Agreement.

---

[3]   These procedures orders include the *Scheduling and Procedures Order* entered in the McLane Defendants' adversary proceedings [Adv. Pro. No. 17-50718-LSS D.I. 20] and the *Order Establishing Streamlined Procedures Governing Adversary Proceedings with Total Amount in Controversy Greater Than $75,000.00* entered in the adversary proceedings of the other Objecting Defendants [e.g., Adv. Pro. No. 17-50716 D.I. 20] (together, the "Procedures Orders").

## REPLY

### I.    The Settlement Agreement is in the Best Interests of the Estate

8.    When considering whether the Settlement Agreement is in the best interests of the estate, the court must "balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996). In striking this balance, the court should consider: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of residual stakeholders. Id. A court will normally accept the judgment of the movant as long as a legitimate business justification exists. See id. at 395.

9.    In determining whether to accept the Settlement Agreement, the Trustee considered the following facts and circumstances:

- The Present Claims asserted against the estate, which total over $11 million and comprise approximately one-third of all pending claims;
- The Trustee's causes of action against Howard Present and the other Present Defendants, the cost of litigating such claims to judgment, and the likelihood of recovery if a judgment were obtained; and
- The value of settling those claims and causes of action, both in terms of maximizing distributions to other creditors, minimizing cost and uncertainty, and the timeliness of finality as to such matters.

10.    As set forth below, these facts and circumstances satisfy the Martin factors and provide a legitimate business justification for the Trustee's decision to enter into the Settlement Agreement.

A. *Probability of Success and Complexity of Litigating Howard Present's Claims Against the Estate*

11.     As set forth in the Motion, on September 11, 2015, Howard Present filed two proofs of claim against the estates totaling over $11 million[4]:

- Proof of claim number 63, against debtor F-Squared Investment Management LLC, asserted a claim of $8,495,941 for severance, health insurance claims, and unpaid obligations arising under (a) a Non-Competition, Non-Solicitation, Non-Disclosure and Intellectual Property Assignment Agreement dated July 30, 2014; and (b) a Voting, Non-Competition, Non-Solicitation, and Cooperation Agreement dated November 13, 2014.

- Proof of claim number 64, against debtor F-Squared Investments, Inc., asserted a claim of $2,809,524 for similar severance, health insurance claims, and unpaid obligations.

- Additionally, each proof of claim asserts an estimated indemnification claim of "no less than $2,305,600" arising under the Limited Liability Company Agreement of F-Squared Management, LLC (the "LLC Agreement") and the bylaws of F-Squared Investments, Inc. (the "Bylaws").  As of January 2018, Howard Present estimated that these indemnification claims totaled approximately $5.1 million.

12.     The indemnification provision of the LLC Agreement requires indemnification provided that "(i) such Indemnified Person acted in good faith in a manner that such Indemnified Person believed was in or not opposed to the best interests of the Company, and (ii) *such Indemnified Person's conduct did not constitute a knowing violation of law or willful misconduct*."  LLC Agreement at § 8.1(a) (emphasis added).

13.     The indemnification provision of the Bylaws requires indemnification "if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation . . . . *The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and*

---

[4]     The Trustee was unaware that the proofs of claim filed by Howard Present are not publicly available.  They are attached hereto as **Exhibit B**.  Howard Present's address, telephone number, and email address have been redacted.

*in a manner which such person reasonably believed to be in or not opposed to the best interests of the corporation . . . .*" Bylaws at § V.1 (emphasis added).

14.     The McLane Defendants assert that the jury verdict rendered in the SEC's civil action against Howard Present in the United States District Court for the District of Massachusetts, captioned <u>Securities and Exchange Commission v. Present</u>, No. 14-14692-LTS (the "<u>SEC Action</u>") would permit the Trustee to "easily disallow" these claims without the need for extensive litigation.  <u>See</u> McLane Objection at ¶ 9.  For the Trustee to "easily disallow" the asserted indemnifications, the jury must have found that Howard Present acted "knowingly" or with "intent to defraud" with respect to the securities laws violations.  The jury did not make the requisite findings as to Howard Present's state of mind.

15.     Rather, when evaluating the state of mind with which Howard Present violated the securities laws, the jury was presented with several options on the verdict form: "Intent to Defraud," "Intent to Defraud or Recklessness," and "Intent to Defraud or Recklessness or Negligence."[5]  For each count relating to violation of the securities laws, the jury selected "Intent to Defraud **or** Recklessness" and with respect to the state of mind with which Howard Present aided and abetted F-Squared's violation of Section 206(4) of the Investment Advisers Act and Rule 206(4)-1, the jury selected "Knowing **or** Reckless."  <u>See</u> *Verdict Form* [SEC Action D.I. 353] (emphasis added).  Had the SEC been able to prove that Howard Present intended to defraud F-Squared, the jury would have selected a different verdict, and the Trustee would have likely been able to disallow Howard Present's indemnification claims.

16.     However, given the broad indemnification provisions in F-Squared's corporate documents, the "or Reckless(ness)" findings complicate the Trustee's ability to apply collateral

---

5   With respect to Howard Present's violation of the Investment Advisers Act of 1940, the jury was asked only to select between "Intent to Defraud" and "Intent to Defraud or Recklessness."

estoppel or similar theories to the verdict in the SEC Action to eliminate millions of dollars in indemnification claims asserted by Howard Present. To do so, the Trustee may now be required to prove (as the SEC apparently could not, even after a lengthy trial) that Howard Present, in fact, *knowingly* violated the securities laws, or the Trustee must otherwise find an alternate means to disallow the indemnification claims. This burden would, in the Trustee's judgment, entail material risk and (win or lose) require substantial litigation costs.

17.     Moreover, unlike the payments F-Squared made to the McLane Defendants and the other Objecting Defendants, the non-indemnification portions of Howard Present's claims are for unpaid amounts that F-Squared was obligated to pay to Howard Present under a series of contracts. As discussed below, the jury verdict did not by its terms eliminate such obligations or provide a ready basis to recover these payments. Thus, in order to defeat these claims, the Trustee must demonstrate that Howard Present's conduct was so egregious that it relieved F-Squared of the obligation to perform under these contracts. In order to do that, the Trustee must first succeed on his own claims against Howard Present, as described below.

B.  *Probability of Success and Complexity of Litigating the Trustee's Causes of Action Against Howard Present*

18.     As set forth in the Howard Present Complaint, the Trustee has brought causes of action against Howard Present sounding in breach of fiduciary duty, actual fraudulent transfer, constructive fraudulent transfer, preference, violation of the Delaware Limited Liability Company Act, and equitable subordination. As noted in the McLane Objection, the damages sought by the Trustee included the avoidance of $7,527,135.83 in payments made to Howard Present.

19.     If augmenting the estate "involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome," a trustee is required "to reach an informed

judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays and expense of prolonged litigation in an uncertain cause." LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 212 F.3d 632, 635 (1st Cir. 2000).

20.     The Trustee DOES believe that he would eventually succeed on all of these causes of action, including constructive fraudulent transfer and preference. However, the verdict rendered in the SEC Action does not itself make prosecuting these causes of action simple.  The jury did not consider breach of fiduciary duty or the related claims the Trustee asserted in the Howard Present Complaint, nor any defenses that Howard Present may raise if the Trustee were to proceed with that action.  In order to avoid and recover the payments made to Howard Present, and to recover on the other counts in the Howard Present Complaint, the Trustee would essentially need to re-litigate the SEC Action, and have this Court reach a verdict in certain respects better (for the Trustee) than the one the SEC was able to obtain in its action, in order to establish (a) liability for breach of fiduciary duty and the other related claims, and (b) lack of reasonably equivalent value for certain of the transfers from F-Squared to Howard Present.

21.     Even though the Trustee believes that the Howard Present Complaint would ultimately be resolved in favor of the Trustee, such success is not certain, and would require substantial and protracted litigation, at material cost to the estates.

C.  *Likely Difficulties in Collecting a Judgment*

22.      Prior to entering into the Settlement Agreement, the Trustee demanded, and each of the Present Defendants provided, a sworn financial disclosure statement.  Howard Present also previously filed affidavits with the United States District Court for the District of Massachusetts in connection with the SEC Litigation asserting that he is insolvent.  See *Order on Motion for Entry of Final Judgment* [SEC Action D.I. 385] (the "Final Judgment Order") at 10; see also

*Assented-to Motion by Defendant for Leave to File Affidavit Under Seal* [SEC Action D.I. 360]. Based on the Present Defendants' financial disclosure statements, and the fact of Howard Present's prior affidavits, the Trustee believes that even if the Howard Present Complaint and the complaints against each of the other Present Defendants are ultimately resolved in favor of the Trustee, it is likely to be extremely difficult for the Trustee to recover any material amount from Howard Present or from any of the Present Defendants.

23.     Furthermore, the SEC has obtained a judgment against Howard Present in the amount of $12,424,604 plus interest. <u>See</u> Final Judgment Order.  In the Final Judgment Order, District Court Judge Sorokin assumed and accepted that Howard Present is insolvent based on his affidavits. As noted by the McLane Defendants, Judge Sorokin also found that "Present retains substantial earning capacity."  However, after the entry of the Final Judgment Order, the SEC commenced an administrative proceeding against Howard Present, and, in connection with that proceeding, on April 27, 2018, entered an *Order Making Findings and Imposing Remedial Sanctions*, attached hereto as **<u>Exhibit C</u>** (the "<u>Administrative Order</u>").  The Administrative Order bars Howard Present "from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization."  Administrative Order at § 3.  Howard Present is thus unable to seek employment in the field in which he has spent his career.

24.     Howard Present has asserted under oath that he is fifty-seven years old and unemployed.  Nonetheless, the Trustee admits it is theoretically possible that Howard Present may obtain future employment outside the securities field that could result in substantial earnings.  However, it is far from certain that he will, especially now that he has been found to have committed securities fraud.  Even if he does secure future employment resulting in

substantial earnings, the amount of the SEC's judgment against him, together with his other liabilities, would impair the Trustee's ability to recover on his own judgment.  In any event, the decided cases require this Court to consider the *likely difficulties* the Trustee would face in recovering on a judgment against Howard Present in determining whether there is a legitimate business justification for the Settlement Agreement, and the facts here justify the Trustee's conclusion that any ability to effect a material recovery in favor of the Liquidating Trust is, at best, speculative.  See In re Martin, 91 F.3d at 393.

     *D.  The Interests of other Trust Beneficiaries*

25.     As described above, even if the Trustee were successful in his claims against Howard Present, in the unlikely scenario that the Trustee would be able to recover on a judgment against him, such recovery could be many years in the future.  Thus, recoveries to other stakeholders from the Liquidating Trust on account of allowed claims against the Debtors' estates may not increase at all, and would likely be diminished even further on account of the legal fees required to prosecute such claims.

26.     By contrast, the Settlement Agreement would substantially increase recoveries to other stakeholders immediately.  Of the approximately $41 million in claims pending against the estates, nearly 1/3 of these claims were asserted by Howard Present.[6]  The substantial reduction and subordination of the Present Claims materially decreases the size of the claims pool, thereby materially increasing the recoveries of other holders of beneficial interests in the Liquidating Trust.  As a result, the terms of the Settlement Agreement achieves a direct and material benefit to other stakeholders, including certain of the Objecting Defendants.

---

[6]    The deadline for the Trustee to object to claims has not yet passed, and the Trustee may yet object to certain additional claims.

27.     The Settlement Agreement requires that all holders of beneficial interests in the Liquidating Trust receive distributions equal to 100% of the face amount of their claims against F-Squared (the "Senior Distributions") before Howard Present receives any distribution. Moreover, Howard Present's subordinated interest in the Liquidating Trust on account of his claims is reduced to $5 million (amounting to a waiver of over $6 million in claims), which would be payable only from the lesser of (a) 20% of any amount recovered from the so-called NFR Defendants in Adv. Proc. No. 17-50691; or (b) any amount remaining after all Senior Distributions are made. The Trustee concluded and believes that such a subordinate interest, with recourse to only a single source of potential litigation recovery, is reasonable and avoids dilution to all other beneficiaries except under exceptionally fortunate circumstances.

28.     Furthermore, the implication in the McLane Objection that the Settlement Agreement would allow Howard Present to recover at the expense of other creditors of the estates is simply false.  See McLane Objection at ¶ 19.[7]  Howard Present will recover nothing unless all other creditors of F-Squared receive distributions amounting to 100% of the face amount of their allowed claims.

29.     After considering and weighing each of the facts and circumstances outlined above, the Trustee has determined, in accordance with his business judgment and fiduciary duties, that entering into the Settlement Agreement is in the best interests of all holders of beneficial interests in the Liquidating Trust.   Furthermore, the "acid test" for approval of a settlement "is not whether pressing onward might have produced more funds for the estate but,

---

[7]     It may be that the McLane Defendants are arguing that if there is a recovery against the NFR Defendants and F-Squared's creditors are paid in full, that recovery should go to holders of equity interests in F-Squared (for example, the McLane Defendants).  However, Howard Present and the other Present Defendants also had substantial equity interests in F-Squared, which are waived pursuant to the Settlement Agreement.  Thus, in the extremely unlikely event that all creditors are paid in full and any amount remains in the Liquidating Trust, Howard Present and the Present Defendants would receive a distribution whether or not the Settlement Agreement is approved.

rather, whether accepting the settlement (and thereby forgoing the risks inherent in intransigence) fell within the universe of reasonable alternatives." In re Mailman Steam Carpet Cleaning Corp., 212 F.3d at 636. See also In re Capmark Fin. Grp., 438 B.R. 471, 515 (Bankr. D. Del. 2010) (holding that in order to approve a settlement, "[t]he court . . . should . . . determine whether the settlement falls above the lowest point in the range of reasonableness."); In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (quoting In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004)) ("In the final analysis, 'the court does not have to be convinced that the settlement is the best possible compromise.' Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'" (internal citations omitted)). Here, the disallowance of over $6 million of Howard Present's $11 million in claims and the subordination of the remainder is certainly within the reasonable range of litigation possibilities, and above the lowest point in the range of reasonableness. As the Settlement Agreement satisfies the Martin factors, the Court should accept as reasonable the judgment of the Trustee and approve the Settlement Agreement.

## II.    The Settlement Agreement Is Not Inconsistent With the Adversary Proceedings Against the Defendants

30.    The McLane Defendants next argue that the Motion should be denied because it requires the Trustee to adopt a set of facts inconsistent with the adversary proceedings the Trustee has commenced against them.    This is incorrect and misleading, and the McLane Defendants are clearly trying to posture as to their own exposure to the Trustee under the guise of an objection to the Settlement Agreement.    In entering into the Settlement Agreement, the Trustee is of course not "adopting" any position or set of facts, whether or not inconsistent with the actions against the McLane Defendants or any other group of defendants, nor does the Settlement Agreement require that he adopt any new position or set of facts at all.

31.    The McLane Defendants claim that the NFR Litigation requires "proof [that], of necessity, would mean [that] F-Squared did not knowingly engage in illegal activity and thus could not (even under the Trustee's novel theory) have been 'insolvent from its inception.'" McLane Objection at ¶ 17.    This claim is misleading for three reasons.

- First, F-Squared *admitted* that it knowingly and willfully violated the securities laws.

- Second, as the Trustee has repeatedly argued in his pleadings against the McLane Defendants, F-Squared was insolvent from the time it began falsely advertising that its track record dated back to 2001 because these false claims violated certain federal securities laws, and each of these repeated violations subjected F-Squared to millions of dollars of off-book but nonetheless real indemnification obligations and breach of contract claims in favor of its financial clients.    F-Squared did generate revenues and profits.    However, Judge Sorokin found that all or nearly all such revenues, even those generated by F-Squared after the removal of the backtested performance data, were the product of these false advertisements. Final Judgment Order at 7.

- Third, whether it was Howard Present or the NFR Defendants, or both, who were ultimately responsible for the false advertisements that caused F-Squared's insolvency is irrelevant to whether or not F-Squared was in fact insolvent at the times that it made the transfers to the McLane Defendants that the Trustee has sought to avoid.    It is entirely appropriate for the Trustee to assert claims against

several joint tortfeasors as to wrongful conduct that caused harm to F-Squared and its creditors.

32.     Moreover, even if this argument were correct, it is not a reason to deny the Settlement Agreement.  The Trustee is not now "pay[ing] to elicit from Present" facts that are inconsistent with the complaints against the McLane Defendants.  See id.  The Trustee is not paying Howard Present at all, and the Settlement Agreement does not require that Howard Present provide the Trustee with any particular set of facts against any particular defendant or defendants.  Rather, the Settlement Agreement merely requires that if Howard Present is in possession of documents that the Trustee does not have, that he turn over such documents and assist the Trustee in identifying and reviewing such documents as they may be related to the actions brought by the Trustee (which may include the NFR Litigation, the actions against the McLane Defendants, any other adversary proceedings filed in these Chapter 11 cases, and/or any other actions brought by the Trustee in other courts).  At this time, the Trustee does not know, and cannot know, whether any such documents exist, what such documents may or may not contain, what facts may be elicited therefrom, or whether they bear any relevance to any of these actions.

33.     Neither is it the case that the "sizable and protracted litigation expense" that the Liquidating Trust would incur is alone sufficient for the Trustee's "choos[ing] to stop his pursuit of Present" while still "pursuing the McClelland Defendants (and dozens of others)."  See id. at ¶ 8.  Unlike the McLane Defendants, Howard Present is waiving over $6 million in claims against the estate, and subordinating the rest, in exchange for the Trustee "choos[ing] to stop his pursuit" of the Present Defendants.  The Settlement Agreement with the Present Defendants is no deterrent to any potential settlement with the McLane Defendants or any other defendants. Indeed, the Trustee has entered into and continues to enter into settlement agreements with

dozens of other defendants in adversary proceedings in these cases, and will continue to do so if (but only if) those settlements are in the best interests of the Liquidating Trust beneficiaries as a whole.

34.     Since nothing in the Settlement Agreement is inconsistent with the adversary proceedings against the McLane Defendants or the positions taken by the Trustee in such adversary proceedings, the McLane Objection should be denied.

### III.    The Settlement Agreement Does Not Prevent Howard Present From Testifying Or Complying With Subpoenas

35.     On June 20, 2018, after filing the Motion, the Trustee received a request from a large group of defendants to clarify certain language in the proposed order granting the 9019 Motion (the "Proposed Order") regarding (a) the Present Defendants' ability to participate in the Bankruptcy Cases and the adversary proceedings filed therein as witnesses or deponents; and (b) the scope of the releases granted by the Trustee in the Agreement.

36.     The Settlement Agreement does not prevent defendants in adversary proceedings brought by the Trustee from issuing subpoenas to Howard Present or deposing him in connection with issues in their own proceedings.   Rather, the Settlement Agreement simply limits the Present Defendants' further voluntary participation in these cases—not an unusual provision. Moreover, the Trustee does not have the ability to release causes of action held directly by third parties, and the Settlement Agreement does not purport to do so.

37.     Certain objectors constructively proposed certain language to clarify these two points. The Trustee obtained the consent of the Present Defendants to those changes.   The Trustee believes that the Amended Order he has filed satisfies the concerns raised in certain of the Joinders and many of the concerns raised in the Schiff Hardin Objection.  Thus, the Trustee

respectfully requests that this Court issue an order in the form of the Amended Order granting the relief requested in the Motion.

### IV.    The Trustee Reserves All Rights With Respect to Documents Produced Under the Settlement Agreement

38.    The Settlement Agreement requires Howard Present to deliver to the Trustee any documents related to F-Squared that are not in the Trustee's possession.  Several groups of Objecting Defendants have requested that the Trustee commit to producing any such documents received from Howard Present (the "Present Documents").

39.    As no Present Documents have yet been produced to the Trustee, the Trustee does not yet know (a) what the volume of the Present Documents will be, if any; (b) whether any of the Present Documents are responsive to discovery requests received by the Trustee from defendants in adversary proceedings brought by the Trustee; and (c) whether any of the Present Documents are protected by attorney-client privilege or the common-interest privilege in place between Howard Present and F-Squared (to which privilege the Trustee has succeeded).  Thus, the Trustee cannot commit to producing all of the Present Documents to defendants.  The Trustee will, however, comply in all respects with the Federal Rules of Bankruptcy Procedure and the Procedures Orders with respect to these documents.

40.    In any case, there is no need to resolve now a discovery dispute that may or may not arise at some point in the future between the Trustee and certain defendants.   If such dispute arises, the parties will attempt to resolve it and, if they cannot, they will seek the Court's guidance at that point.

**WHEREFORE**, the Trustee respectfully requests the entry of an order, substantially in the form attached hereto as Exhibit A, (i) approving the Settlement Agreement and (ii) granting such other relief as is just and proper.

Dated:  August 9, 2018

     Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner, Esq. (DE 3995)
Scott J. Leonhardt, Esq. (DE 4885)
Jason A. Gibson, Esq. (DE 6091)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
rosner@teamrosner.com
leonhardt@teamrosner.com
gibson@teamrosner.com

    -and-

**BROWN RUDNICK LLP**
William R. Baldiga, Esq.
Sunni P. Beville, Esq.
Sharon I. Dwoskin, Esq.
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
wbaldiga@brownrudnick.com
sbeville@brownrudnick.com
sdwoskin@brownrudnick.com

*Counsel for the Liquidating Trust*