# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>F-SQUARED INVESTMENT MANAGEMENT LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11469 (LSS)<br><br>Jointly Administered |
| CRAIG JALBERT, IN HIS CAPACITY AS TRUSTEE FOR F2 LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>VADIM FISHMAN,<br><br>Defendant. | Adv. Pro. No. 17-50474 (LSS)<br><br>**Hearing date TBD**<br>**Objection Deadline: 14 days from now** |

## DEFENDANT'S MOTION TO ADJUDICATE ALLEDGED CONFIDENTIALITY OF EXPERT REPORTS AND DEPOSITION TRANSCRIPTS

1. Vadim Fishman asks this Court to adjudicate the alleged confidentiality of expert insolvency reports, supporting materials, and deposition testimony. The Trustee has accused Mr. Fishman's counsel of breaches of a non-existent confidentiality order and Local Rule 9018-1(f) in a patent effort to keep all the non-existent bases for the Trustee's and his counsel's inventive insolvency-from-inception theory out of the public view. The Trustee also has alleged that the report of the expert he hired to opine on the Debtors' insolvency, paid for by creditors' funds, is confidential and only to be used in Mr. Fishman's adversary proceeding, notwithstanding that many other adversary proceedings face identical issues.

2. Mr. Fishman hired and paid for an expert who refutes the Trustee's Expert Report, which the Trustee also alleges is confidential. Mr. Fishman disagrees with the Trustee's unfounded

confidentiality designations and asks for the Court to determine what the Trustee has to publicly disclose to ensure a fair process and, in support hereof, respectfully states as follows:

## PRELIMINARY STATEMENT

1. Two months ago, Craig Jalbert, the Trustee for the F2 Liquidating Trust (the "Trustee") produced, in Mr. Fishman's adversary proceeding, an expert report prepared by Kevin Clancy, who had been hired by the Trustee to opine on when the above-captioned Debtors became insolvent (the "Expert Report"). Since then, the Trustee has taken the position that all the Debtors' documents produced to date to Mr. Fishman are "confidential" and that the Expert Report, as well as the rebuttal expert report critiquing it, may not be publicly disclosed. In fact, the Trustee now contends that the Expert Report was produced subject to Local Rule 9018-1(f) and that Mr. Fishman *must* enter into a confidentiality stipulation.[1] This Mr. Fishman is not willing to do because he considers the request improper: neither he nor his counsel are aware of any information produced in discovery that could be considered "confidential" or would render the Expert Report or rebuttal report "confidential." Mr. Fishman would like to share this information with other adversary defendants for use in the Trustee's lawsuits against them and engage in dispositive motion practice in his matter without the procedural constraints attendant to a protective order that, here, would serve no legitimate purpose.

2. The undersigned tried to meet and confer with counsel for the Trustee concerning the alleged confidentiality of the discovery materials but the Trustee, despite repeated and specific inquiries, has not provided anything other than a conclusory and unsubstantiated basis for his

---

[1] This in of itself makes no sense, because, if the Expert Report had been produced pursuant to Local Rule 9018-1(f), then the undersigned would not have been permitted to share it with anyone, including her client or the rebuttal expert, without the Trustee's permission. There is nothing in Local Rule 9018-1(f) that suggests it can be used as a discovery tool to effectively stymy discovery proceedings.

position. Consequently, Mr. Fishman objects to the entry of a confidentiality order for lack of good cause.

3.  The Third Circuit is a strong defender of public access to judicial proceedings because

> public access to judicial records discourages parties from denying the existence of certain documents in subsequent litigation, thus encouraging greater integrity from attorneys and their clients. Access to civil proceedings and records also acts as a valuable source of information in civil cases that have a "public" character… [B]y opening the judicial process to greater public scrutiny, access to the judicial process reinforces the democratic ideals of our society. Public access provides greater opportunities for the public to become educated about the workings of the civil judicial process. In addition, access to judicial proceedings and records helps to impart legitimacy to the pronouncements of our rather insulated federal judiciary.

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 664 (3d Cir. 1991) (granting motion to unseal summary judgment record holding "that the public interest encompasses the public's ability to make a contemporaneous review of the basis of an important decision of the district court"). These principles are of a particular resonance in the bankruptcy fishbowl where creditors and fellow adversary defendants have a strong interest in scrutinizing the fairness of the bankruptcy system. The Trustee's attempt to shield the public and other adversary defendants from access to materials relevant to the Debtors' solvency and the Expert Report–which was paid for with the Debtors' creditors' funds–is not in line with these principles and should be rejected.

## ARGUMENT

4.  While the Trustee thus far has failed (despite numerous requests) to identify the factual bases for his claim that everything in these cases must be concealed from the public eye, there are only two ways for him to accomplish this: through a confidentiality or a protective order. For the reasons set for below, neither is warranted here.

I.  **LEGAL STANDARD APPLICABLE TO DEPRIVING THE PUBLIC OF ITS RIGHT TO ACCESS**

   A) **There Is a Presumption in Favor of Transparency and Public Access in Judicial Proceedings**

   5.  There is a strong and long-standing presumption under the common law in favor of public access to judicial records. *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 745-6 (D. Del. 2018) (citing to *Nixon v. Warner Communs. Inc.*, 435 U.S. 589, 597 (1978)).[2]

   > As the Third Circuit has explained, public access promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court; diminishes possibilities for injustice, incompetence, perjury, and fraud; provides the public with a more complete understanding of the judicial system and a better perception of its fairness; and helps assure that judges perform their duties in an honest and informed manner.

*Id.* at 746 (internal citations and quotation omitted). It is a "truism … that in a free and democratic society courts must conduct their business in the open, subject always to scrutiny by the public that these courts serve." *GKC Strategic Value Master Fund, LP v. Baker Hughes, Inc.*, 2019 Del. Ch. LEXIS 235, at *4 (Ch. June 25, 2019).[3] Because of the presumption of public access, the burden of persuasion that the interest in secrecy outweighs the right to access at all times is on the party resisting disclosure. *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993).

---

[2]  The First Amendment right to access is not germane hereto because it typically is attendant to criminal proceedings and "protective orders in a civil discovery do[] not require first amendment analysis[.]" *Cipollone v. Liggett Group., Inc.* 785 F.2d 1108, 1119 (3d Cir. 1986), *cert. denied*, 484 U.S. 976 (1987) (citing to *New York v. U. S. Metals Ref. Co.*, 771 F.2d 796, 802 (3d Cir. 1985)). All that is required is a Rule 26 good cause analysis. *Id.* Further, the "right of the public to inspect and copy judicial records antedates the Constitution." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986).

[3]  "The Court of Chancery Rules parallel the federal rules" of civil procedure and "federal precedents are persuasive" authority in the Delaware Chancery Court. *Emerald Partners v. Berlin*, 726 A.2d 1215, 1226 (Del. 1999). A copy of the *Baker Hughes, Inc.*, opinion is attached hereto as **Exhibit A**.

6. The right of access applies to pretrial motions, both preliminary and dispositive, and related filings. *Goldstein v. Forbes* (*In re Cendant Corp.*), 260 F.3d 183, 192 (3d Cir. 2001); *Copley Press, Inc. v. Peregrine Sys.* (*In re Peregrine Sys.*), 311 B.R. 679, 687 (D. Del. 2004); *Joint Stock Soc'y v. UDV N. Am., Inc.*, 104 F. Supp. 2d 390, 402 (D. Del. 2000). The Court's "action on a motion [is a] matter[] which the public has a right to know about and evaluate. *Hotel Rittenhouse Assocs.*, 800 F.2d at 344.

7. The right of access also applies to documents that the Court has been asked to consider in connection therewith. *See FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987) (right to access "extends, in the first instance, to materials on which a court relies in determining the litigants' substantive rights") (internal citation omitted). The Third Circuit previously has stated that

> ***whether or not a document or record is subject to the right of access turns on*** *whether that item is considered to be a 'judicial record.' … The status of a document as a 'judicial record,' in turn, depends on **whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings. While filing clearly establishes such status, a document may still be construed as a judicial record, absent filing, if a court interprets or enforces the terms of that document**, or requires that it be submitted to the court under seal.*

*In re Cendant Corp.*, 260 F.3d at 192 (3d Cir. 2001) (***emphasis*** added).

8. Public access is of particular significance in bankruptcy proceedings, as "unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system." *N. Bay Gen. Hosp., Inc. v. McNaull* (*In re N. Bay Gen. Hosp., Inc.*), 404 B.R. 429, 438 (Bankr. S.D. Tex. 2009). As the Court of Appeals for the Second Circuit has aptly put it: "The conduct of bankruptcy proceedings not only should be right but must seem right." *In re Ira Haupt & Co.*, 361 F.2d 164, 168 (2d Cir. 1966).

### B) The Bankruptcy Code Provides Limited Statutory Exceptions to the Public Access Rule

9. Indeed, the common law right to public access–that is, transparency in judicial proceedings–was deemed of such importance that it was codified in section 107(a) of the Bankruptcy Code, which provides that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."[4] 11 U.S.C. § 107(a); *see In re Alterra Healthcare Corp.*, 353 B.R. 66, 73 (Bankr. D. Del. 2006) ("One of the burdens of a bankruptcy filing is that, to a degree, the debtor's affairs become an open book. This openness has been accurately described as operating in a 'fishbowl.'") (internal citation omitted).

10. The sealing of the public docket is sparingly permitted. It is only in "very limited situations, [that] pleadings and exhibits thereto contain information so personal to a party, and of such tangential public interest, that the information should be withheld in the interest of justice." *Baker Hughes, Inc.*, 2019 Del. Ch. LEXIS 235, at **4-5. In the bankruptcy context, these limited exceptions are codified in 11 U.S.C. § 107(b) and (c). Subsection (b) provides:

> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> (1) *protect an entity with respect to a trade secret or confidential research, development, or commercial information*; or
>
> (2) *protect a person with respect to scandalous or defamatory matter* contained in a paper filed in a case under this title.

---

[4] The "and" in the phrase "in a case under this title and the dockets of a bankruptcy court" is to be understood as providing for two alternative criteria by which papers in bankruptcy proceedings become open to the public, not as requiring that both criteria be met. *See In re Motions Seeking Access to 2019 Statements*, 585 B.R. at 749.

11 U.S.C. § 107(b). Subsection (c) pertains to individuals and provides for the protection of personal identifiers. 11 U.S.C. § 107(c) ("Any means of identification (as defined in section 1028(d) of title 18) …").

11. Commercial information is information that would result in "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Alterra Healthcare Corp.*, 353 B.R. at 75 (citing *Video Software Dealers Ass'n v. Orion Pictures Corp.* (*In re Orion Pictures Corp.*), 21 F.3d 24, 27 (2d Cir. 1994)). Such information must be so critical to the operation of the party seeking the protective order that its disclosure would cause that party commercial harm. *Id.*

## II. LEGAL STANDARD APPLICABLE TO CONFIDENTIALITY AND PROTECTIVE ORDERS

### A) For a Confidentiality Order to Issue, Good Cause Must Have Been Demonstrated

12. A confidentiality order should not issue unless good cause exists. *Frupac Int'l Corp. v. M/V "Chucabuco"*, 1994 U.S. Dist. LEXIS 8176, at *4 (E.D. Pa. June 14, 1994) ("*Frupac*"). The seminal Third Circuit case discussing the "good cause" requirement for entry of a protective or confidentiality order is *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994).[5] *Pansy* concerned the attempt by newspapers to gain access to a settlement agreement that had been designated confidential by a confidentiality order entered by the lower court. The newspapers sought to obtain such access arguing that the confidentiality order was not justified and should be set aside. The Third Circuit held that there was nothing in the record to indicate that the court below had engaged in a balancing of public and private interests in entering the confidentiality order, and remanded the case to determine whether the order was justified.

---

[5] Protective and confidentiality orders are "functionally similar, and require a similar balancing between public and private concerns. *Pansy*, 23 F.3d at 786.

*The Disturbing Trend in Entering Confidentiality Agreements without Justification*

13. Before articulating several factors for the lower court to balance, *Pansy* initially discussed what it considered a "disturbing" trend for courts to "routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders." *Id*. at 785. "[S]imply because courts have the power to grant orders of confidentiality does not mean that such orders may be granted arbitrarily." *Id*. In this regard, *Pansy* borrowed the following "insightful observations" from the First Circuit:

> A … troubling tendency accompanies the increasing frequency and scope of confidentiality agreements that are ordered by the court. These agreements are reached by private parties and often involve materials and information that is never even presented to the court. With the signature of a federal judge, however, they are converted into a powerful means of maintaining and enforcing secrecy. Once signed, a confidentiality order, which has converted a private agreement into an order of the court, requires the court to use its contempt power to enforce the private agreement…. Because they often involve information not in the control of the court, and may … implicate public concerns, confidentiality orders, when not subject to proper supervision, have a great potential for abuse. For this reason, judges should review such agreements carefully and skeptically before signing them.

*Id.* at 785 n.14 (citing *City of Hartford v. Chase*, 942 F.2d 130, 137-8 (2d Cir. 1991) (Pratt, J., concurring)).

14. The Third Circuit in *Pansy* found the routine entry of confidentiality agreements troubling because such agreements should only be entered upon a showing of "good cause." *Id*. at 786. This is the legal standard regardless of whether a confidentiality agreement is obtained at the discovery or at the settlement stage. *Id*. Courts have the duty to independently assess the propriety of a confidentiality order at any stage during litigation. *Id*.; *see City of Harford v. Chase*, 942 F.2d 130, 136 (2d Cir 1991) (parties do not get "a carte blanche either to seal documents … Rather, the trial court-not the parties themselves-should scrutinize every such agreement involving

the sealing of court papers and determine what, if any, of them are to be sealed, and it is only after very careful, particularized review by the court that a Confidentiality Order may be executed."); *Cooperativa De Ahorro Y Credito Abraham Rosa v. Pub. Corp.* (*In re Fin. Oversight & Mgmt. Bd.*), 406 F. Supp. 3d 180, 187 (D.P.R. 2019) ("the judge remains the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it) even if a motion to seal is unchallenged") (internal quotation and citation omitted).

*The Alleged Injury Must Be Stated with Specificity and the Disclosure Interests that Are Sought to Be Sacrificed Must Be Identified*

15. Good cause, so *Pansy*, "is established on a showing that disclosure will work a **clearly defined and serious injury** to the party seeking closure." *Id*. (citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir 1984)) (*emphasis* added). That injury cannot be broadly or generally alleged but "must be shown with specificity." *Id*.; *see In re Avandia Mktg., Sales Practices & Prods. Liab. Litig*, 924 F.3d 662, 671 (3d Cir. 2019). Unsubstantiated allegations of harm do not meet the good cause standard. *Id*. (citing to *Cipollone*, 785 F.2d at 1121. This is so because only if parties have "state[d] with specificity the information they seek to protect and their interest in privacy[, and have] establish[ed] what general or specific interests in disclosure will be sacrificed by granting" a confidentiality order can the Court apply *Pansy*'s balancing test. *Frupac*, 1994 U.S. Dist. LEXIS 8176, at * 4.

16. *Frupac* is instructive regarding the meaning of "specificity" of in the context of a confidentiality agreement or protective order. The case involved a request by the parties for the Court to "so order" their stipulated confidentiality agreement. The court denied their request.

    a. The confidentiality stipulation contained a provision prohibiting the disclosure of "all personal data, salary levels and performance reviews and other performance analyses of the parties and any other employees or ex-

9

    employees." *Frupac*, 1994 U.S. Dist. LEXIS 8176, at *6. The court held that this clause was not sufficiently specific and too broad because it did "not explain the specific data, reports, and reviews that are confidential" and the relevancy of the material sought to be protected was "difficult to ascertain" as the stipulation did not identify how it "could be relevant to the resolution of this case." *Id.*

  b. The court also rejected a paragraph prohibiting the disclosure of "trade secrets or other confidential research, development or commercial information within the meaning of Fed. R. Civ. P. 26(c)[]"[6] because the granting of protection for commercial information is discretionary and "the parties['] flail[ure] to allege with specificity what information should be protected and why [made] it impossible [for the Court] .. to identify, apply, manage, and define what information is included … and to make an analysis of the proposal." *Id.*

  c. The court in *Frupac* also noted that the parties had not adequately identified "what interests for disclosure will be sacrificed by" approving the confidentiality stipulation. *Frupac*, 1994 U.S. Dist. LEXIS 8176, at **7-8. Consequently, it lacked sufficient information for performing the required balancing test and declined to issue the protective order. *Frupac*, 1994 U.S. Dist. LEXIS 8176, at *8.

*The Pansy Balancing Test*

17. Once a party seeking entry of a confidentiality order has shown a clearly defined and serious injury, the court engages in a balancing test whether the alleged injury outweighs the public's interest to access. *Pansy* articulated several factors for courts in this circuit to weigh whether good cause merits the entry of a confidentiality order. The Third Circuit summarized these factors in a subsequent opinion thusly:

> 1) whether disclosure will violate any privacy interests;
>
> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;
>
> 3) whether disclosure of the information will cause a party embarrassment;

---

[6] *Frupac* was decided under a no longer current Federal Rule 26(c), but the changes between the two versions are immaterial to the analysis in that case.

>   4) whether confidentiality is being sought over information important to public health and safety;
>
>   5) whether the sharing of information among litigants will promote fairness and efficiency;
>
>   6) whether a party benefitting from the order of confidentiality is a public entity or official; and
>
>   7) whether the case involves issues important to the public[.]

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). These factors are neither mandatory or exhaustive, *id.*, but demonstrate that courts are cautioned courts to enter confidentiality orders only upon a showing of a sufficient justification therefore. *Cf. GKC Strategic Value Master Fund, LP v. Baker Hughes, Inc.*, 2019 Del. Ch. LEXIS 235, at *7 (Ch. June 25, 2019) (suggesting that "gamesmanship" is a proper factor to consider"). The balancing of factors for and against access is left to the discretion of the Court. *Hotel Rittenhouse Assocs.*, 800 F.2d at 344.

18. With respect to the first and third of the above factors, courts have held that businesses have no right to privacy and thus, no "protectable privacy interest." *Crum & Crum Enters. v. NDC of Cal., L.P.*, 2011 U.S. Dist. LEXIS 24690, at *9 (D. Del. Mar. 11, 2011). Additionally, all "privacy interests are diminished when the party seeking protection is … subject to legitimate public scrutiny." *Arnold v. Pennsylvania*, 477 F.3d 105, 113 (3d Cir. 2007). Businesses also are held to a higher standard than individuals in the context of claims of embarrassment, which typically is "thought of as a nonmonetizable harm to individuals." *Cipollone*, 785 F.2d at 1121. To succeed in obtaining a confidentiality order on the grounds of embarrassment, a business must show with specificity that "the embarrassment resulting from dissemination of the information would cause a significant harm to its competitive and financial position." *Id.*

19.     As noted above, the burden of proof at all times rests with the party seeking to prevent disclosure. *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d at 671 ("The proponent of the protective order shoulders the burden of justifying the confidentiality of each and every document sought to be sealed.) (internal citation omitted). This also is the case where one party, as here, is seeking an umbrella protective order and, particularly in a case, as here, where there is "reason to believe that virtually all confidentiality designations will be spurious[.]" *Cipollone*, 785 F.2d at 1123.

**B) A Protective Order Under Rule 26(c) May Issue Only Upon a Showing of Clear and Serious Injury in the Event of Disclosure**

20.     Pursuant to Federal Rule 26(c), made applicable to this matter by Fed. R. Bankr. P. 7026, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). For purposes of Rule 26, good cause means that the party resisting disclosure has established that such disclosure "will work a clearly defined and serious injury." *U.S. v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 159 (D. Del. 1999) (citing *Pansy*, 23 F. 3d at 786); *U.S. v. Garrett*, 571 F.2d, 1326 n.3 (5th Cir. 1978) ("stereotyped and conclusory statements" insufficient). The harm alleged must be significant.

21.     A showing of the clearly defined and serious injury must be made with "***current*** evidence … how public dissemination of the pertinent materials now would cause the competitive harm it claims." *Republic of Philippines*, 949 F.2d at 663 (***emphasis*** added) (granting request to unseal and denying motion for protective order where party resisting disclosure had failed to show any current facts supporting its competitive injury claims).

### III.    THE TRUSTEE HAS NOT AND CANNOT SHOW GOOD CAUSE FOR ENTRY OF A CONFIDENTIALITY OR PROTECTIVE ORDER

22.    The Trustee claims that the entry of a confidentiality order is necessary because documents produced to Mr. Fishman allegedly contain "confidential information of third parties[.]" January 29, 2020 email from Trustee's counsel.  However, despite repeated requests, the Trustee has not identified either such allegedly confidential information or what makes any such allegedly confidential information allegedly confidential.  (It also is unclear why such third-party confidential information would have been produced in the first instance.)  This is surprising, given that Debtors' counsel during the chapter 11 proceedings already undertook an extensive review of the Debtors' documents in connection with the SEC's action against Howard Present (the "SEC Action"), in which Mr. Present tried to avail himself of the advice-of-counsel defense.  *See*, *generally*, February 3, 2016, Status Report filed in *SEC v. Present*, C.A. No. 14-14692 (LTS) (D. Mass.), attached hereto as **Exhibit B** (noting, at p. 6, that [b]oth Plaintiff and Defendant are in possession of a privilege and redaction log prepared by F-Squared in connection with the SEC investigation captioned *In the Matter of F-Squared Investments, Inc.*, B-02855.).  The Trustee would have inherited the Debtors' privilege and redaction logs.

23.    Moreover, the Trustee's assertion of confidentiality is inconsistent with the position the Debtors took in the SEC Action, namely, that they were concerned about the disclosure of attorney-client privileged materials but not the disclosure of anything else.  *Id*. p. 5 (stating that the Debtors "lacked the resources to monitor discovery in this action, much less monitor both discovery and trial" and, consequently, sought the entry of a protective order prohibiting the dissemination of *privileged information*).  The Debtors showed no concern for the disclosure of any commercial or proprietary information in the SEC Action.  And they were not alone in not being concerned about information beyond that protected by the attorney-client privilege.  As is

apparent from the attached letter, even Virtus Investment Partners, the Debtors erstwhile largest client, raised no confidentiality concerns in the SEC Action. See **Exhibit C** (advising the court that the parties had agreed to limit the trial testimony of Virtus' Senior Vice President and Chief Legal Officer to "non-privileged factual matters").

24. The Trustee also declined to respond to the very specific request to identify the documents Mr. Clancy relied upon in his Expert Report that the Trustee contends is confidential. Instead, the Trustee is simply taking the position that the confidentiality stipulation it would like to see entered should be entered because it is "standard" and provides a mechanism by which the confidentiality designation can be challenged. Both points lack merit. First, the standard for entering a confidentiality order is not that it is "standard" but that "good cause exists." Second, the proposed wholesale designation of all discovery as confidential and putting the onus on Mr. Fishman to challenge the designation of individual documents amounts to an impermissible, wasteful burden- and fee shifting.

25. Most *Pansy* factors weigh in favor of an open docket and against concealing evidence related to the Debtors' pre-petition financial condition, including the Expert Report. Significantly, disclosure will not violate any privacy interests, because the Debtors, as business entities, have a low expectation of privacy, invoked the very public proceeding of bankruptcy protection, and their financial affairs and business dealings were aired and recorded in a 17-day jury trial in the SEC Action. Permitting the Trustee to try this matter in secrecy, with no closure to those creditors and adversary defendants that have been watching these cases from day one, would erode all residual faith in the fairness of the bankruptcy system. *Cf. Goldstein v. Forbes* (*In re Cendant Corp.*), 260 F.3d 183, 193 (3d Cir. 2001) ("The right of public access is particularly compelling here, because many members of the 'public' are also plaintiffs in the class action…

Additionally, the right of access diminishes the possibility that 'injustice, incompetence, perjury, [or] fraud' will be perpetrated against those class members who have some stake in the case but are not at the forefront of the litigation. Finally, openness of class actions provides class members with 'a more complete understanding of the [class action process] and a better perception of its fairness.'") (internal citations omitted).

## CONCLUSION

For the foregoing reasons, Mr. Fishman requests that the Court determine that entry of a confidentiality or protective order is not appropriate in this matter and that the Trustee may not rely on Local Rule 9018-1(f) to keep materials from the public's view and grant such other and further relief as is just and proper.

Dated: February 14, 2020                                KLEIN LLC

*/s/ Julia B. Klein*
Julia B. Klein (DE 5198)
919 North Market Street
Suite 600
Wilmington, Delaware 19801
(302) 438-0456

*Counsel for Defendant*